## Commonwealth *v.* Curcio, Appellant.

*Criminal law—Manslaughter—Charge—Province of jury.*

The power and duty of the jury to ascertain the degree of murder is fixed by law in this state, and a peremptory instruction that takes from it the power to do this is erroneous.

While it is not the duty of the court to submit the question of manslaughter where there is nothing in the testimony to reduce the grade of the crime below murder, instruction on this subject should be refused only in very clear cases.

Where a homicide is committed without malice and under the influence of sudden passion due to an adequate cause the law mitigates the offense and reduces it from murder to manslaughter.

Argued Oct. 22, 1906.   Appeal, No. 245, Jan. T., 1907, by defendant, from judgment of O. & T. Lackawanna Co., Feb. T., 1906, No. 8, on guilty of murder in the first degree in case of Commonwealth v. Saverio Curcio.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Indictment for murder.

The circumstances of the killing are stated in the opinion of the Supreme Court.

Defendant presented these points:

13. Manslaughter is defined to be the unlawful killing of another without malice, expressed or implied.   And if the jury believe that this killing was done with sufficient cause of provocation, and the defendant was in a state of rage and passion, without time to cool, placing the defendant beyond the control of his reason and suddenly impelling to the deed, then he cannot be convicted of any higher crime than manslaughter.   *Answer:* The thirteenth point asks us to give you a definition of the crime of manslaughter, and it is refused as inapplicable in this case, because under the evidence there can be no conviction of manslaughter. [4]

The court charged, inter alia, as follows:

[Under the view which I take of the law and the evidence in this case there can be no conviction in any event upon the count for manslaughter and you may disregard that count. If the defendant is guilty he may be convicted of murder but not of manslaughter, and if found guilty it would be your duty to determine whether he is guilty of murder in the first degree or in the second degree.] [9]

[Having admitted that he shot this man to death, the defendant is guilty of murder unless he did it in self-defense. To show that it was done in self-defense the burden is upon him of showing some necessity, either real or apparent, for firing the shots; or else show that he was in danger, either real

or apparent, of being robbed by the assailant, the deceased, with threats of violence by which he was put in fear.] [10]

Verdict of guilty of murder in the first degree. Defendant appealed.

*Errors assigned* were (4, 9, 10) above instructions, quoting them.

*David J. Reedy*, with him *Herbert L. Taylor*, for appellant. —In the great caution exercised in the trial of homicide, the instruction as to manslaughter should usually be given. It is only in clear cases that it can be properly omitted, whether specially requested or not. In some cases the reasons given for affirmance is that instructions were not asked and the prisoner therefore had no ground of complaint. In others instructions were asked for and the decisions are put upon the ground that the prisoner was not entitled to instructions not legitimately raised by the testimony : Com. v. Sutton, 205 Pa. 605.

If there is any evidence whatever as to manslaughter, no matter how weak or insufficient it may appear to the court, the defendant is entitled to have the law of manslaughter given to the jury: Sparf v. U. S., 156 U. S. 51 (15 Sup. Ct. Repr. 273); McLaurin v. State, 64 Miss. 529 (1 So. Repr. 747); Potter v. State, 85 Tenn. 88 (1 S. W. Repr. 614); Liskosski v. State, 23 Tex. App. 165 (3 S. W. Repr. 696); Kelly v. State, 68 Miss. 343 (8 So. Repr. 745) ; State v. Blunt, 91 Mo. 503 (4 S. W. Repr. 394); McGuffie v. State, 17 Ga. 497; Holly v. State, 29 Tenn. 141.

*Wm. R. Lewis*, district attorney, for appellee.—Where there is no evidence on an indictment for murder which points in the remotest degree to the offense of manslaughter, the court commits no error in failing to define manslaughter: Com. v. Buccieri, 153 Pa. 535; Com. v. Crossmire, 156 Pa. 304; Com. v. Brown, 76 Pa. 319; McMeen v. Com., 114 Pa. 300; Clark v. Com., 123 Pa. 555; Com. v. Sutton, 205 Pa. 605.

OPINION BY MR. JUSTICE FELL, January 7, 1907 :

The assignments of error to be considered are those that relate to the refusal of the court, on request, to define the crime of manslaughter, and to the instruction that there could not be

a conviction of manslaughter, and that the count charging it should be disregarded by the jury. The power and duty of the jury to ascertain the degree of murder is fixed by law in this state, and a peremptory instruction that takes from it the power to do this is erroneous : Commonwealth v. Sheets, 197 Pa. 69 ; Commonwealth v. Kovovic, 209 Pa. 465. While it is not the duty of the court to submit the question of manslaughter where there is nothing in the testimony to reduce the grade of the crime below murder, instruction on this subject should be refused only in very clear cases : Commonwealth v. Sutton, 205 Pa. 605. The cases in which the omission or refusal of the court to instruct as to manslaughter has been sustained were cases free from possible doubt. Examples of these are Brown v. Commonwealth, 76 Pa. 319, and Clark v. Commonwealth, 123 Pa. 555, where homicides were committed for the purpose of robbery, and where instructions were not asked for ; Commonwealth v. Buccieri, 153 Pa. 535 ; Commonwealth v. Crossmire, 156 Pa. 304 ; Commonwealth v. Eckerd, 174 Pa. 137, and Commonwealth v. Sutton, 205 Pa. 605, where there was not the slightest evidence to reduce the grade of the crime to manslaughter. If there is any evidence that would reduce the crime to manslaughter, the defendant is entitled to have the jury instructed upon the subject.

The defendant testified, in substance, that Ferrio, the deceased, with a companion, Rocco, with both of whom he was slightly acquainted, came to his boarding house on Saturday night ; that on Sunday morning he went with them to a store in the vicinity and that on their way back to the boarding house, about noon, Ferrio called him behind a large billboard, demanded money of him, drew a stiletto and threatened to kill him if he did not give him money ; that before they reached the house he was told by Rocco that he had better give the money demanded because Ferrio was a member of the Black Hand, and that he was afterwards given the same advice by the proprietor of the house ; that he believed that the Black Hand or Mafia was an oath-bound society whose members levied blackmail on Italians and committed robbery and murder ; that he promised to give the money when he reached the boarding house ; that when at the house Ferrio again repeated his demand and threat, got up from his place at a

table, took hold of the lapel of the defendant's coat, and asked him to go out; that he went out on the porch following Ferrio, who seized his coat at the breast and demanded money; that he offered to give the money, and that Ferrio drew a stiletto and said that he did not want money now; that as he drew his revolver Ferrio let go his hold and stepped back; that he, in fear and panic because of the threats that had been made and his knowledge of Ferrio's reputation for evil-doing, fired one shot and turned and ran away, firing his revolver aimlessly behind him.

What occurred immediately before the shooting, and the effect it was likely to have on the mind of the defendant, who was eighteen years old, is best shown by his own account of it. He testified: " While he was sitting there and talking about the money, finally he came there and took hold of me by the coat and he said, ' Come on outside ; I want to talk to you.' When we got out on the front porch, he grabbed me by the breast and he said, ' Well, are you going to give me the money or not ? ' And he placed his hand in his pocket on the inside of his coat and I saw that stiletto, and he said, ' Didn't I tell you that this stiletto is going to kill you to-day ? ' When he had hold of his stiletto that way and said he was about to kill me then, I said, ' I am going to give you the money.' He says, ' No, I don't want the money now,' and he pulled out his stiletto to strike me."

If the jurors believed the defendant's statement they might have found that the shooting was done without malice and under the influence of sudden anger, caused by the assault, or of terror caused by the threat to be carried into immediate execution. It was, therefore, error to refuse an instruction as to manslaughter and to instruct the jury that the defendant, having admitted the shooting, was guilty of murder unless he did it in self-defense. This testimony was not limited to the plea of self-defense ; it went directly to the mitigation of the crime. Where a homicide is committed without malice, and under the influence of sudden passion due to an adequate cause, the law mitigates the offense and reduces it from murder to manslaughter.

The fourth, ninth and tenth assignments are sustained, and the judgment is reversed and a venire facias de novo awarded.