## Commonwealth *v.* Colandro, Appellant.

*Criminal law—Murder—Evidence—Trial—Offer—Blending of admissible and inadmissible evidence.*

1. The ordinary rule that where an offer blends irrelevant and inadmissible matters with matters relevant and admissible, its rejection as a whole is not error, ought not to be summoned to sustain a ruling prejudicial to the interests of a defendant on trial for murder.

*Criminal law—Murder—Charge—Self-defense—Burden of proof—Preponderance of evidence—Necessity for accepting version of either side.*

2. In trying a murder case, the court should have two principles in mind to communicate to the jury for their guidance, namely, (1) that while all the ingredients necessary to prove the commonwealth's case must be shown beyond a reasonable doubt, (2) this severe rule does not apply in considering an affirmative defense; there a fair preponderance of the evidence in favor of the defendant is sufficient.

3. Where a defendant in a murder trial sets up self-defense and undertakes to establish his excuse, the evidence relied upon, whether it comes from his side, or from the commonwealth's side, or from both, must, when weighed, show by its fair preponderance the extenuation sought to be established, in order to acquit.

4. In such a case the trial judge commits no error in saying that the burden of proving self-defense is upon the defendant and that it would have to be shown to the satisfaction of the jury, but he should add that they would only have to be satisfied by the fair preponderance of the evidence.

5. In a murder case the jury is not bound to accept the version of the commonwealth or the version of the defense. It is their duty to consider all the testimony and to make up their minds therefrom as to the facts.

*Criminal law—Murder—Voluntary manslaughter—Terror.*

6. On a murder trial where self-defense is set up as a defense for

the killing, but there is also evidence from which the jury might infer that the killing was in consequence of sudden terror from threats, it is reversible error for the court to tell the jury that self-defense is the only issue, and to eliminate the possibility of manslaughter.

7. Voluntary manslaughter is a homicide intentionally committed under the influence of passion. The term "passion" as here used includes both anger and terror provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected. Terror from the belief on the part of the slayer that his life is in danger is sufficient, though such belief is not reasonable.

8. The border line between self-defense and this character of manslaughter seems to be the existence as the moving force of a reasonably founded belief of imminent peril to life or great bodily harm, as distinguished from the influence of an uncontrollable fear or terror, conceivable as existing, but not reasonably justified by the immediate circumstances. If the circumstances are both adequate to raise and sufficient to justify a belief in the necessity to take life in order to save one's self from such a danger, where the belief exists and is acted upon, the homicide is excusable upon the theory of self-defense; while, if the act is committed under the influence of an uncontrollable fear of death or great bodily harm, caused by the circumstances, but without the presence of all the ingredients necessary to excuse the act on the ground of self-defense, the killing is manslaughter.

*Criminal Law—Murder—Reasonable doubt.*

9. The defendant in a murder trial is not only entitled to any reasonable doubt which may arise upon an ultimate consideration of the evidence remaining after the testimony deemed unworthy of belief has been sifted out, but to the benefit of every reasonable doubt which may enter the mind of the juror upon the consideration of any item of evidence during the process of such sifting out.

*Criminal law—Murder—Trial—Charge—Particular deeds—Reputation—Review of evidence.*

10. In a murder trial the court is in error in charging that, "Previous good character to be of any avail is like any other material question of fact in a lawsuit. It must be properly proven. The evidence upon which defendant relies for proof of previous good reputation must satisfy you as a matter of fact that he had such a good reputation," as this puts the matter covered too strongly against the defense, for in the criminal law the word "satisfy," when used without qualification, may be taken to mean, to convince beyond a reasonable doubt.

11. In such a case in charging on this point, the jury should be told that the defendant is entitled to begin with the presumption that he had a good reputation, and that in considering the testimony produced to reinforce this presumption all reasonable doubts are to be

resolved in his favor.  In appropriate cases they should also be informed concerning the proper bearing of certain references to particular offenses other than the one on trial, that inquiries as to these are for the purpose of ascertaining the opportunities, sources and extent of the knowledge of the respective witnesses on the point of the general reputation of the defendant and not to show that the defendant was probably guilty of these other offenses.  Such instructions are peculiarly required in a murder case where defendant's character witnesses, after testifying to his good reputation as a peaceful, quiet man, are asked on cross-examination concerning defendant's alleged kidnaping of a girl two years prior to the homicide.

12. Upon a trial for murder the judge should give a general review of the evidence on the one side and the other, which fairly and adequately presents the respective contentions of the parties, with enough references to the items of evidence to assist the jury in recalling it as a substantial whole, and to appreciate its bearing.  But the manner in which the evidence shall be dealt with must of necessity depend upon the circumstances in each case, and to a degree upon the line of arguments pursued by counsel in addressing the jury.  It is only, in exceptional instances, where, for example, it plainly appears that the charge is misleading, or that it has a tendency to withdraw the attention of the jury from material evidence, or to magnify the importance of the proofs on one side and belittle those on the other, that a trial judge will be reversed for inadequacy of charge in reviewing the evidence.

Argued Feb. 20, 1911.  Appeal, No. 353, Jan. T., 1910, by defendant, from judgment of O. & T. Lackawanna Co., October Session, 1910, No. 13, on verdict of murder of the first degree in case of Commonwealth v. Dominic Colandro.  Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Reversed.

Indictment for murder.  Before NEWCOMB, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree and judgment thereon.  Defendant appealed.

The *errors assigned* are sufficiently indicated in the opinion.

*H. L. Taylor,* of *Taylor & Lewis,* and *A. A. Vosburg,* for appellant.—Evidence that deceased was in the habit of

going armed with deadly weapons and that this fact was known to his slayer is admissible in behalf of the latter: King v. State, 65 Miss. 576 (5 So. Repr. 97, 7 Am. St. Rep. 681); State v. Graham, 61 Iowa, 608 (16 N. W. Repr. 743); Com. v. Keller, 191 Pa. 122; 3 Rice on Evidence, 580; Kerr on Homicide, sec. 400; Meyers v. Com., 83 Pa. 131.

There is no greater burden on the accused to establish self-defense by affirmative evidence than any other defense; but if all the evidence raises a reasonable doubt as to whether he acted in self-defense, he should be acquitted: Henson v. State, 112 Ala. 41 (21 So. Repr. 79); Lane v. State, 44 Fla. 105 (32 So. Repr. 896); Dent v. State, 105 Ala. 14 (17 So. Repr. 94); State v. Alexander, 66 Mo. 148; State v. Hill, 69 Mo. 451; People v. Riordan, 117 N. Y. 71 (22 N. E. Repr. 455); Briceland v. Com., 74 Pa. 463; Turner v. Com., 86 Pa. 54; Tiffany v. Com., 121 Pa. 165.

We have been unable to find any case which sustains the proposition that the reasonable doubt must arise only from the evidence which the jury believe. We think that the universal rule is that it must arise upon the consideration of all the evidence in the case taken together: Tiffany v. Com., 121 Pa. 165; Smith v. Compton, 67 N. J. Law, 548 (52 Atl. Repr. 386); Moore v. Dozier, 128 Ga. 90 (57 S. E. Repr. 110); Kimmel v. Kimmel, 3 S. & R. 336; Hanney v. Com., 116 Pa. 322.

The learned court was in error in his charge to the jury to the effect that the reputation of the appellant was his reputation among his acquaintances: Heine v. Com., 91 Pa. 145; Hanney v. Com., 116 Pa. 322.

*C. P. O'Malley* and *Joseph O'Brien*, district attorney, for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, April 10, 1911:

The defendant, Dominic Colandro, an Italian working-man, came to this country in 1902, and at the time of the homicide, May 23, 1910, he was about thirty years of age.

He testified that, about three months prior to the killing, Ferdinand Rocco, the deceased, had met him and demanded the sum of $200; that shortly thereafter he again met the defendant, produced a revolver, and threatened to kill him unless the demand was complied with; that on the day before the killing Rocco came to the defendant's house and told him that unless the money was paid he would be killed, which demand and threat were repeated on the afternoon of the day of the homicide; that immediately before the killing a messenger came and informed the defendant that Rocco wanted to see him; that the defendant refused to leave his house, and the messenger returned and said that Rocco would give him just ten minutes to come out; that another messenger then came and informed him that if he did not come out the deceased would come to the house and kill him within five minutes; that the defendant came out and met Rocco, who again demanded the money; that he became frightened and went back into his house and put his shotgun in the kitchen; that within a few minutes after this Rocco came to the kitchen door and pushed it open, told the defendant that he was going to kill him and started to shoot into the room with a revolver; that the defendant, fearing that he was in danger of losing his life, took up his gun and fired the fatal shot, and the deceased staggered back against a fence and fell over into the next yard dead.

According to the commonwealth's testimony, on the day before the killing Rocco had charged the defendant with having improperly secured $30.00 from another Italian and demanded that it be returned, stating that if the defendant did not return the money a certain Italian society would take the matter up; the defendant showed some feeling and told the deceased that it was none of his business; on the next day Rocco was visiting his mother, and when he left the house of the latter to go to his own home he was obliged to pass close by the defendant's door; the latter suddenly came out of his house with a gun and pointing it directly at Rocco shot him before there had

been any words exchanged between them. The commonwealth claimed that it was a cold-blooded murder, and the defendant that he was in great fear at the time of the killing and shot to defend himself.

The first assignment is that the court erred in refusing the following offer: "Counsel for the defendant proposes to prove . . . . that the decedent went armed, carried a revolver, and on the night preceding this affair he met the witness on the stand, attempted to shoot him, demanding money from him at the same time; for the purpose of showing that the dead man went armed and carried a revolver." A number of witnesses for the commonwealth testified that Rocco had no revolver at the time of the killing, and his brother-in-law testified positively that the deceased did not own one, evidently using the word "own" in the sense of "possess." Whether or not Rocco had a revolver was a material issue in the case, and if he had been seen with such a weapon on the night before the killing, it would at least have been some evidence to indicate that he possessed one. The offer was refused on the ground that as a whole it tended to introduce "a collateral issue entirely extrinsic to the issue on trial." While the ordinary rule is that where an offer blends irrelevant and inadmissible matters with a matter relevant and admissible, its rejection as a whole is not error, yet in Com. v. Bezek, 168 Pa. 603, referring to this rule, we said: "But in deciding the question raised by the specification we shall not take into consideration the rule supported by the cases cited. These are civil cases and if the rule stated in them is applicable to, it ought not to be summoned to sustain a ruling prejudicial to the interests of a defendant on trial for murder." So much of the offer as was relevant should have been admitted. The fact that some inseparable, incidental, collateral facts, irrelevant in themselves and prejudicial to the prosecution, might thus be caused to appear, would not make the competent part any the less admissible: Willis v. Bernard, 8 Bingham, 376. The possibility of prejudice could be sufficiently cured by

restricting the use: Connecticut River Power Co. v. Dickinson, 74 Atl. Repr. 585; Dalton v. Dregge, 99 Mich. 250. The first assignment is sustained.

The second assignment complains that the trial judge said to the jury, "The burden of proving self-defense is on the defendant. To make out that defense he must prove it to your satisfaction. His claim rests on the assertion that Rocco was on the platform and at the kitchen door, where it is claimed he had fired several shots with a revolver under circumstances that put the defendant in fear of his own life or of great bodily harm. If the evidence so satisfies you, then he is entitled to be acquitted and your verdict will be not guilty, otherwise, you will find him guilty of murder and fix the degree according to instructions to be given you presently. I can see no basis for a claim of self-defense other than that which is put forward by the defendant, and that makes it necessary that he satisfy you that his version of the shooting is correct." Previous to this the court had said to the jury that self-defense was "the one issue" arising from the evidence, and that the possibility of "manslaughter" was not in the case.

There was no error in saying that the burden of proving self-defense was upon the defendant and that it would have to be shown to the satisfaction of the jury: Com. v. Palmer, 222 Pa. 299; Ortwein v. Com., 76 Pa. 414; Coyle v. Com., 100 Pa. 573; Com. v. Wireback, 190 Pa. 138; Alexander v. Com., 105 Pa. 1; Com. v. Ferruchi, 219 Pa. 155. But the learned trial judge should have added that they would only have to be satisfied by the fair preponderance of the evidence. Where a defendant sets up self-defense and undertakes to establish his excuse, the evidence relied upon, whether it comes from his side, or from the commonwealth's side, or from both (Wharton on Homicide, 3d ed., pp. 552–553), must, when weighed, show by its fair preponderance the extenuation sought to be established, in order to acquit: Com. v. Palmer, 222 Pa. 299. In trying a case of this character, the court

should have two principles in mind to communicate to the jury for their guidance, namely, (1) while all the ingredients necessary to prove the commonwealth's case must be shown beyond a reasonable doubt, (2) this severe rule does not apply in considering an affirmative defense; there a fair preponderance of the evidence in favor of the defendant is sufficient: Meyers v. Com., 83 Pa. 131; Com. v. Deitrick, 218 Pa. 36.

It was error to tell the jury that self-defense was the only issue, and to eliminate the possibility of manslaughter; and again, it was error to say that it was necessary for the defendant to satisfy the jury that his version of the shooting was correct. In a murder case the jury are not bound to accept the version of the commonwealth or that of the defense; it is their duty to consider all the testimony and to make up their minds therefrom as to the facts. It was possible in this case that the jury might have found that there was a certain amount of truth in the evidence produced by the commonwealth and some truth in that produced by the defense, but that neither side was wholly to be believed. On this theory, the jury might have believed the story of the threats to take defendant's life, and that he was put in great fear by such threats; that when he saw Rocco coming toward him it raised a passion of terror in his mind, and he shot under the control of that passion. Yet, at the same time, they might not have believed that Rocco had crossed the fence and advanced as far as the defendant's kitchen door, or that he had actually fired pistol shots into the room. Under such a state of facts the prisoner would have been guilty of manslaughter and not of murder.

"Voluntary manslaughter is a homicide intentionally committed under the influence of passion . . . . :" 21 Am. & Eng. Ency. of Law (2d ed.), 172. "The term 'passion' as here used includes both anger and terror provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected:" 21 Am. & Eng. Ency. of Law (2d ed.), 173. "Passion, as

used in a charge defining manslaughter . . . . means any
of the emotions of the mind known as anger, rage, sudden
resentment or terror, rendering the mind incapable of
cool reflection:" 6 Words & Phrases, p. 5227. "Although
'anger' is the passion usually existing in cases of this
class, yet any other passion, as sudden resentment or
terror, rendering the mind incapable of cool reflection,
may reduce the grade of the crime:" 21 Cyc. 737. "Pas-
sion which will reduce homicide to manslaughter may
consist of either anger . . . . or terror. . . .    The terror
from the belief on the part of the slayer that his life is in
danger is sufficient, though his belief is not reasonable:"
Wharton on Homicide (3d ed.), sec. 194. "In U. S. v.
Heath, 20 Dist. Col. 272, on appeal, the court approved
the following instruction: "So that you have two theories
that would reduce the crime to manslaughter: One is the
blow was struck in the heat of passion . . . . ; the other
is, if it was struck under an apprehension of danger, but
the apprehension of danger was not reasonable. . . ."
This doctrine is also recognized in Howard v. State, 23
Tex. App. 265, and in Com. v. Drum, 58 Pa. 9, where, at
page 21, it is said: "Or, from . . . . an uncontrollable
fear seizing him, but without such an excusable necessity
as I have described he drew out the knife and struck the
blow without malice, he will be guilty of manslaughter
only." Finally, in Com. v. Curcio, 216 Pa. 380, a case in
which the facts were strikingly like those at bar, the pres-
ent chief justice, in reversing the trial court for refusing
to charge on manslaughter, said: "If the jurors believed
the defendant's statement they might have found that
the shooting was done without malice and under the in-
fluence of sudden anger, caused by the assault, or of terror
caused by the threats. . . .    It was, therefore, error to
refuse an instruction as to manslaughter and to instruct
the jury that the defendant, having admitted the shooting,
was guilty of murder unless he did it in self-defense. This
testimony was not limited to the plea of self-defense, it
went directly to the mitigation of the crime."

"The state of the evidence may be such as to call for an instruction both on manslaughter and self-defense:" 21 Cyc. 1076. Although in the present case it might have been improbable that the jury would accept the theory of manslaughter, yet where under the evidence such a contingency is possible, it is error to eliminate that grade of homicide from the charge: Com. v. Curcio, 216 Pa. 380. While the evidence might not have been sufficient to satisfy the jury that the plea of self-defense had been sustained, it might have appealed to them as sufficient to negative or to throw such a doubt upon the element of malice as to reduce the crime to manslaughter. Therefore, in addition to the instruction on the law of self-defense, the jury should have been told, if they found that at the time of the shooting the defendant was not actuated by malice, but that he acted under the influence of an uncontrollable mortal fear raised by the threats and conduct of Rocco, and if they thought that the immediate circumstances, though adequate to raise the fear, were not sufficient reasonably to justify a belief on the part of the defendant that he was in immediate· danger of death or great bodily harm, the grade of the crime would not rise higher than manslaughter. The dividing line between self-defense and this character of manslaughter seems to be the existence, as the moving force, of a reasonably founded belief of imminent peril to life or great bodily harm, as distinguished from the influence of an uncontrollable fear or terror, conceivable as existing, but not reasonably justified by the immediate circumstances. If the circumstances are both adequate to raise and sufficient to justify a belief in the necessity to take life in order to save oneself from such a danger, where the belief exists and is acted upon, the homicide is excusable upon the theory of self-defense: Com. v. McGowan, 189 Pa. 641; while, if the act is committed under the influence of an uncontrollable fear of death or great bodily harm, caused by the circumstances, but without the presence of all the ingredients necessary to excuse the act on the ground of self-defense,

the killing is manslaughter: Com. v. Drum, 58 Pa. 9. The second assignment is sustained.

In sustaining the second assignment we have not overlooked the fact that the trial judge said to counsel for the defense, "You do not claim there is any ground for manslaughter, you do not claim that there was any heat of blood from sudden provocation?" And that counsel replied, "We have not any evidence of it, no, sir." And that the court then said, "I understood your client to say in response to your question that he fired because he was afraid." To which counsel replied, "Yes, that is the idea." The difficulty is that both court and counsel appear to have overlooked the fact that under some circumstances a passion of fear would have the same effect in reducing the crime to manslaughter as a passion arising upon sudden "heat of blood." In view of this apparent mutual misconception, we cannot permit the rights of the defendant to be prejudiced. Particularly is this so, when the record discloses more than one offer of evidence for the purpose of showing that the alleged threats and conduct of the deceased had put the defendant "in fear," and had "scared" the defendant, and when the testimony of the defendant is that he shot because "I was afraid that he would kill me."

We see no reversible error in the matters called to our attention by the third assignment.

The fourth assignment complains of the following instructions: "A reasonable doubt, is one which remains in the mind . . . . of a juror after fairly and impartially considering all the evidence pro and con, sifting out any, if there be any, which he deems unworthy of belief, and then basing his judgment upon such part of the evidence which he deems worthy of belief; if his mind still hesitates to come to a conclusion of the defendant's guilt, he is in a state of reasonable doubt, and that is the doubt to the benefit of which the defendant is entitled." The vice of this instruction lies in the last phrase, "that is the doubt to the benefit of which the defendant is entitled." The

defendant is not only entitled to any reasonable doubt which. may arise upon an ultimate consideration of the evidence remaining after the testimony deemed unworthy of belief has been sifted out, but to the benefit of every reasonable doubt which may enter the mind of the juror upon the consideration of any item of evidence during the process of such sifting out. Although the trial judge had previously instructed that the defendant was entitled to the benefit of any reasonable doubt that might arise on a consideration of the entire evidence in the case, we cannot say that .the present assignment is free from harmful error. The assignment is sustained.

The fifth assignment is that the court erred in charging: "Are you satisfied that those of the witnesses called for that purpose, and who did say that his previous reputation was good, had knowledge of the general speech of the people among the defendant's acquaintances, and are those who would be likely to know what his reputation was?" This part of the charge is criticised owing to the use of the phrase "the defendant's acquaintances." Immediately before, the court had said, "In order to testify to any man's reputation in the community where he has lived, it is necessary that the general speech of the people be known to the witness." In view of this, the excerpt complained of cannot be characterized as reversible error, and the assignment is dismissed.

While on the subject of reputation, as this case must be retried, we take occasion to point out that the learned trial judge should not have said to the jury that, "Previous good character to be of any avail is like any other material question of fact in a law suit. It must be properly proven. The evidence upon which the defendant relies for proof of previous good reputation must satisfy you as a matter of fact that he had such a good reputation." This, either standing alone or with its context, was putting the matter covered rather too strongly against the defense, for in the criminal law the word "satisfy," when used without qualification, may be taken to mean, to convince beyond a

reasonable doubt: Anderson's Law Dictionary; 1 Green-leaf on Ev. (13th ed.), p. 4. In the first place, the jury should have been told that the defendant was entitled to begin with the presumption that he had a good reputation: 22 Am. & Eng. Ency. of Law (2d ed.), p. 1284; Under-hill on Crim. Ev., p. 95; Fletcher v. State, 49 Ind. 124, and that in considering the testimony produced to rein-force this presumption all reasonable doubts were to be resolved in his favor. They should also have been in-formed concerning the proper bearing of certain references to particular offenses other than the one on trial, that the inquiries as to these were for the purpose of ascertaining the opportunities, sources and extent of the knowledge of the respective witnesses on the point of the general repu-tation of the defendant, and not to show that the defend-ant was probably guilty of these other offenses. Such instructions were peculiarly required in view of the cross-examination of the defendant's character witnesses who, after testifying to his good reputation as a peaceful quiet man, were asked, "Did you know about him kidnaping a girl from Powderly?"—"Do you remember a couple of years ago hearing of an Italian girl being kidnaped at Powderly?"—"Never saw anything in the newspapers about it?"—"Don't you remember reading that?" Had these questions been objected to it would have been the duty of the court to have excluded them. "Evidence of a good moral character offered by the defendant in a criminal prosecution must be limited to the particular trait of character involved in the commission of the crime charged. So in like manner the cross-examination of his witnesses . . . . must be limited to the same trait:" 3 Ency. of Evidence, 21; 12 Cyc. 413; Cathcart v. Com., 37 Pa. 108; Pauli v. Com., 89 Pa. 432. Furthermore, a witness "cannot be asked questions to elicit his knowl-edge of particular acts as distinguished from what he has heard:" 12 Cyc. 416; the inquiry must be limited to the general speech of the community on the subject: Kimmel v. Kimmel, 3 S. & R. 336; Wike v. Lightner, 11 S. & R.

198; Snyder v. Com., 85 Pa. 519. The issue here involved was as to defendant's reputation as a man who would or would not be likely to commit a deadly assault upon another; whether or not a witness had knowledge that the defendant had been accused in a newspaper of kidnaping a girl some two years before was wholly irrelevant. The practical effect of such cross-examination may well have been to brand the defendant as a bad man and to cause the jurors to approach a consideration of his defense from that standpoint, or at least to raise doubts in their minds in passing upon his character evidence. Hence the evil in the instructions given, and the necessity for those indicated. (An interesting review of the cases upon this subject will be found in 2 Trickett's Penna. Crim. Law, 940 et seq., and in the opinion of Judge BELL in Com. v. Irwin, 1 Clark, 344. Also see Abbott's Criminal Trial Brief, pp. 424 and 426).

The sixth, seventh, eighth and ninth specifications complain that the trial judge gave undue prominence to the evidence of the commonwealth, and omitted, slighted or minimized much of the evidence favorable to the defendant, and that the charge as a whole was inadequate. Upon a trial for murder the judge should give "a general review of the evidence on the one side and the other, which fairly and adequately presents the respective contentions of the parties, with enough references to the items of evidence to assist the jury in recalling it as a substantial whole, and to appreciate its bearing:" Com. v. Kaiser, 184 Pa. 493. But the manner in which the evidence shall be dealt with must of necessity depend upon the circumstances in each case, and to a degree upon the line of arguments pursued by counsel in addressing the jury. It is only in exceptional instances, where, for example, it plainly appears that the charge is misleading, or that it has a tendency to withdraw the attention of the jury from material evidence, or to magnify the importance of the proofs on one side and belittle those on the other, that a trial judge will be reversed for inadequacy of charge in

reviewing the evidence. While we will not sustain the present assignments upon any of those grounds, we have indicated, in passing upon previous specifications, that for other reasons the charge as a whole is inadequate.

The tenth assignment is to the effect that the court below erred in refusing to grant a new trial on account of after-discovered evidence. Since the case will go back for retrial it is not necessary to treat of this assignment further than to say that the matter was one peculiarly for the trial judge, and we are not convinced of any abuse of discretion.

The matters covered by the eleventh assignment have already been sufficiently discussed in connection with the fifth assignment.

The judgment is reversed and a venire facias de novo is awarded.