## Commonwealth v. Broeckey, Appellant.

Argued January 17, 1950. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Samuel Kagle,* with him *Milton Jacobson* and *Charles Blasband,* for appellant.

*Roger B. Reynolds,* Assistant District Attorney, with him *J. Stroud Weber,* District Attorney, for appellee.

OPINION BY Mr. Justice DREW, March 20, 1950:

The jury found Andro Broeckey, defendant, guilty of murder in the first degree and fixed the penalty at life imprisonment. He has appealed from that judgment and sentence.

Broeckey resided in Phoenixville, Pennsylvania. Esther Hayes lived there with him from December, 1946, until July, 1947, when she went to live with John Jacauyies in the basement of a farm house near Oaks, Montgomery County. Defendant learned of her whereabouts and on September 3, 1947, went to the home of Jacauyies and she agreed to return to him. The following day they went to Philadelphia, but she returned to Jacauyies' home that evening and he went to Phoenixville. On September 6, 1947, Jacauyies and Esther Hayes went to Phoenixville and met defendant. They spent some time there and in the early afternoon the three returned to Jacauyies' home. Jacauyies drank quite heavily and became very much under the influence of liquor. Defendant, however, drank very little and was not intoxicated. About two-thirty or three o'clock in

the afternoon, Esther Hayes' thirty year old son, Nicholas, who was living with her, left the house to do some chores. His mother, who had a few drinks of wine, had gone into another room to sleep. When Nicholas returned he found defendant standing in the bedroom in a very nervous state. Jacauyies had been killed by a heavy blow on the left side of the head and his body was lying on the bed, in a pool of blood, with his head partly covered by a sheet.

Nicholas asked defendant what had happened, and he replied that he and Jacauyies had had a fight. When the police arrived he told them that two men came to the house, argued with Jacauyies over money and then killed him. A little later he said to them: "Now I tell the truth. Yes, I killed John. He stole my woman. I have been looking for John for five weeks." When brought before a Justice of the Peace later, he said: "Esther Hayes my housekeeper, she was for six months and she my cook, and she left home five weeks ago. And I was looking for her. I find her at Oaks. She was at home of John. I told others when I find her with anyone else I was going to kill him. I said to John 'I spent lot money on this woman. You have plenty guts to take her away from me. I spent money for a home.' John said, 'You son-of-a-bitch, how you find me?' As he said that, he grabbed the glass [out of which he had been drinking whiskey], and I grabbed the club behind the kitchen stove and hit him over the head and killed him instantly."

The next day the police found a heavy hickory club, 31 inches long and 5¾ inches in circumference, among high weeds some distance from the house. Defendant identified this club as the one he had used. Doctor Simpson, the coroner's physician, who performed an autopsy, and was called by the Commonwealth, stated that it was his opinion that unconsciousness immediately followed the blow and that death ensued about

five or ten minutes later. He also testified that it was his opinion that deceased was lying down when struck, because "the head would have had to have support on the other side to get the damage that was done by that blow." Defendant insisted that the killing was committed in self-defense.

There is ample evidence in this record to support a finding by the jury that the killing was done with malice and that it was wilful, deliberate and premeditated. Under the Act of June 24, 1939, P. L. 872, Section 701, those elements satisfy the definition of murder in the first degree. We can, therefore, only set aside the verdict if defendant did not receive a fair and impartial trial.

Defendant contends that the learned trial judge committed reversible error in defining and instructing the jury on voluntary manslaughter. The instruction about which defendant complains is, as follows: "Another form of manslaughter could also happen where a man is attacked in some way and becomes suddenly thrown into such fear that he thinks he is going to be killed, even though it might not be true, but if he actually believes he is in such danger of death to place him in sudden and terrific fear, he may, in that fear, kill and even intend to kill. That would still be manslaughter. That would make it manslaughter, if he did the act while under uncontrollable fear that was brought about by the situation or conditions."

Obviously this instruction failed to distinguish between voluntary manslaughter and killing in self-defense. In *Commonwealth v. Colandro,* 231 Pa. 343, 352, 80 A. 571, we said: "The dividing line between self-defense and this character of manslaughter [voluntary, brought about through the influence of a passion of fear] seems to be the existence, as the moving force, of a reasonably founded belief of imminent peril to life or great bodily harm, as distinguished from the influence

of an uncontrollable fear or terror, conceivable as existing, but not reasonably justified by the immediate circumstances. If the circumstances are both adequate to raise and sufficient to justify a belief in the necessity to take life in order to save one's self from such a danger, where the belief exists and is acted upon, the homicide is excusable upon the theory of self-defense . . .; while, if the act is committed under the influence of an uncontrollable fear of death or great bodily harm, caused by circumstances, but without the presence of all the ingredients necessary to excuse the act on the ground of self-defense, the killing is manslaughter." See also *Commonwealth v. Principatti,* 260 Pa. 587, 596, 104 A. 53; *Commonwealth v. Miller,* 313 Pa. 567, 569, 170 A. 128. Since defendant's plea for acquittal was based solely on the ground of self-defense the charge of the court precluded a verdict of not guilty. It was a direction to bring in a guilty verdict even though the jury may have found that the "uncontrollable fear" which caused him to kill Jacauyies was based on a reasonable belief that he was in great danger of death.

The Commonwealth argues that certain points for charge requested by defendant and affirmed by the trial judge corrected any possible misleading of the jury by the erroneous instruction. With this contention we cannot agree, for the error was not expressly withdrawn from the jury, but instead, after the points were affirmed, the court again made the same mistake, when he said: "Did this defendant with malice aforethought commit wilful, deliberate, and premeditated killing, in the killing of John while he was in bed, or did this take place during a fight or argument between them, during which John was on his bed and got up and was going to strike him? The defendant said, 'I became much afraid. I was very much frightened because of the fact I had this physical handicap [he had some years previously lost his left foot] and I couldn't get away from

John and I knew if I tried to run he could come after me and he probably would kill me,' or something of that kind. As I say, if a man is overcome by uncontrollable fear, because of the fact, we will say, he had a physical handicap that would prevent him from escaping, or something like that, that might reduce the crime to manslaughter."

The effect of repeating that erroneous instruction was to nullify the correct statement included in defendant's points for charge. The charge must be read in its entirety (*Commonwealth v. Stelma,* 327 Pa. 317, 192 A. 906) and "Where an erroneous instruction consists of a palpable misstatement of the law, it is not cured by a conflicting or contradictory one which correctly states the law on the point involved, unless the erroneous instruction is expressly withdrawn, for the jury, assuming as is their duty, that the instructions are all correct, may as readily follow the incorrect as the correct: Com. v. Gerarde, 145 Pa. 289." : *Commonwealth v. Divomte,* 262 Pa. 504, 509, 105 A. 821. Here, the affirmance of defendant's point for charge did not clarify or correct the errors and omissions in the balance of the charge. It may have served only to further confuse the jury.

Defendant was entitled to a clear, unequivocal and unambiguous instruction, that, if he struck deceased under an apprehension that his life was in danger and if the apprehension was reasonable, the killing was justifiable. Therefore, a new trial must be granted.

Since this case must be retried, we deem it advisable to state that the main purpose of a charge is to set forth and explain the law to the jury and not to present an argument for the conviction of the defendant. And, a district attorney should present the Commonwealth's case fairly, and he should not, through over-zealousness,

interject, during the trial of the cause, his own personal knowledge of the facts controverted, nor resort to unwarranted interruption during the examination of witnesses by defense counsel, nor should he use leading questions on direct examination.

Judgment and sentence reversed, and a new trial awarded.