Commonwealth *v.* Ewell, Appellant.

590

Argued April 23, 1973.  Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Morris Paul Baran,* with him *Harry D. Sporkin,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Pomeroy, May 2, 1974:

Early on the morning of May 23, 1970, three persons died in a fire which gutted a residence at 40 East Silver Street, Philadelphia.  Appellant Joseph Ewell was arrested later that morning and charged with starting the

fire. That afternoon, Ewell gave a statement to the police admitting responsibility for the blaze. A motion to suppress this statement was denied after a hearing on the issue of its voluntariness, and the statement, along with the corroborating testimony of several witnesses, was introduced at his trial. Appellant was convicted on three counts of first degree murder and one count of arson, and, after denial of post-trial motions, was sentenced to life imprisonment. An appeal to this Court followed.[1]

We will consider first appellant's contention that his motion to suppress his confession was improperly denied. When a defendant alleges that his confession was coerced, the burden is on the Commonwealth to prove the voluntariness of the statement by a preponderance of the evidence. *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). Where the hearing judge has found that a statement was voluntarily given, "our review is limited to a consideration of the testimony of the witnesses offered by the Commonwealth and that portion of the testimony for the appellant which remains uncontradicted". *Common-*

[1] Appellant's arson conviction resulted in a sentence of imprisonment for not less than ten nor more than twenty years, to run concurrently with the three concurrent sentences of life imprisonment imposed on the murder counts. Under the Appellate Court Jurisdiction Act, appellate jurisdiction of Ewell's arson conviction is vested in the Superior Court. Act of July 31, 1970, P.L. 673, No. 223, Art. III, §302, 17 P.S. §211.302. The Commonwealth has not interposed an objection on this score, however, and the failure to object operates to perfect this Court's jurisdiction of the arson appeal unless the Court orders otherwise. Appellate Court Jurisdiction Act, *supra*, §503, 17 P.S. §211.503. While ordinarily we would transfer an arson appeal to the Superior Court, such a course is obviously inappropriate where we have exclusive appellate jurisdiction of appellant's felony-murder convictions arising out of the same facts and involving the same questions of law as does the arson charge. Compare *Commonwealth v. Rife*, 454 Pa. 506, 508 n.1, 312 A.2d 406 (1973).

*wealth v. Davenport,* 449 Pa. 263, 267, 295 A.2d 596 (1972) ; *Commonwealth ex rel. Joyner v. Brierley,* 429 Pa. 156, 239 A.2d 434 (1968).

Appellant did not testify at the suppression hearing, nor did he present any witnesses in his behalf. The Commonwealth called as witnesses four detectives who had taken part in Ewell's arrest and interrogation. The gist of their testimony was that Ewell was arrested at about 11:15 a.m. on May 23, 1970, the morning of the fire. The arresting officers informed Ewell that the charge was homicide. He was taken promptly to the police station, where he was given the required constitutional warnings by a detective Cleary. Ewell appeared to be normal and not under the influence of alcohol or drugs, and his answers indicated a clear understanding and waiver of his rights to silence and the assistance of counsel. A chronology compiled by Detective Cleary and offered in evidence shows that Ewell was given food, coffee and cigarettes an hour or so after the interrogation began, and received additional cigarettes and water thereafter. Ewell admitted his responsibility for the fire at about 2:20 p.m. After making three telephone calls, using the men's room, and resting and smoking for a while, he dictated, read and signed the formal statement which was introduced at his trial. The credibility of the Commonwealth's witnesses was a question for the hearing judge. On the record before us, the Judge was fully warranted in finding that the confession was voluntary.

The other points raised by appellant all concern the court's charge to the jury. We will limit our consideration to the one point which requires a new trial. In his discussion of appellant's confession, the trial judge instructed the jury that ". . . the burden of proving that the defendant's statement was voluntary and *true* rests upon the Commonwealth and that burden must be sustained *by a preponderance of the evidence*" [emphasis

supplied]. While this is a correct statement of the law on the question of voluntariness,[2] it is, of course, not correct with regard to the truth of appellant's statement. The Commonwealth need not prove every specific evidentiary fact in its case in chief beyond a reasonable doubt; this burden attaches only to the elements of the crime charged.[3] A defendant's voluntary out-of-court statement is merely another piece of evidence to be considered in resolving the ultimate issue of guilt or innocence, and jurors can attach as much or as little weight to it as they see fit. In the case at bar, the jury might have disregarded Ewell's statement altogether and still have convicted him on the other evidence introduced by the Commonwealth. The difficulty here, however, is that the converse is also true; the statement constituted an admission of every fact necessary to establish appellant's guilt. Since the facts constituting the corpus delicti were undisputed, the confession was in itself a sufficient legal basis for Ewell's conviction. Indeed, the trial judge so instructed the jury when he said, soon after giving the erroneous instruction previously quoted: "Summing up on this issue, therefore, you can find the defendant guilty of felony-murder, if you find this statement which he gave to the police of his participation in the arson was voluntarily given and that it was true; however, *if you find his statement* was not voluntarily given or that it *was not true,* then you cannot consider that statement as any evidence of the defendant's guilt and you must then determine from other evidence whether the defendant's guilt of arson and murder has been established. . . ." (Emphasis supplied.) We think that, taken together, the passages we

_____

[2] *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968) ; *Lego v. Twomey,* 404 U.S. 477, 30 L.Ed.2d 618, 92 S. Ct. 619 (1972).

[3] See the opinion announcing the decision of the Court in *Commonwealth v. Porter,* 449 Pa. 153, 157, 295 A.2d 311 (1972).

have quoted from the charge permitted the jury to return a verdict of guilty on the basis of a preponderance of the evidence, even if the jurors entertained a reasonable doubt as to appellant's guilt.

It is, of course, a well-settled rule of law that the charge to the jury must be considered as a whole. *Commonwealth v. Fostar*, 445 Pa. 216, 317 A.2d 188 (1974). In the case at bar, the court told the jury that "[y]ou should consider the facts and circumstances surrounding the making of a statement, along with all other evidence in the case in judging its truthfulness and deciding how much weight, if any, the statement deserves on the question of guilt or innocence". In addition, the court several times charged the jury that the burden was on the Commonwealth to prove the defendant's guilt beyond a reasonable doubt. Nevertheless, on a matter as important as the Commonwealth's burden in a criminal case to prove all elements of the crime beyond a reasonable doubt, we cannot say that the error was cured by these other portions of the charge which correctly stated the general rule. A similar mistake was made in the charge to the jury in *Commonwealth v. Ross*, 266 Pa. 580, 583, 110 A. 327 (1920), where the trial court placed too high a burden of proof on the defendant in his attempt to establish the defense of self-defense. In that case, the court told the jury that "[w]here the defense is self-defense, it is not enough to present evidence under which the jury may doubt whether or not the defendant may have acted in self-defense. *When any doubt on that subject exists, self-defense is not established.* But when established by a fair preponderance of the evidence, it is excusable homicide." (Emphasis supplied.) Reviewing this instruction, this Court said: "That [italicized portion of the] statement was equivalent to saying that self-defense must be established beyond a reasonable doubt, which is incorrect, for it ignores the distinction between fairly pre-

ponderating evidence and that which is beyond a reasonable doubt. We know, as lawyers, that the trial judge had no such thought in mind—in fact, *he repeatedly stated the law to the jury upon this branch of the case with entire accuracy; but we cannot know judicially that the accidental misstatement did defendant no harm.* It is enough that the jury may have received thereby a wrong impression as to the quantum of proof necessary to establish self-defense." 266 Pa. at 583. (Emphasis supplied.) The underlying rationale of the *Ross* case and kindred decisions[4] is controlling here.

The Commonwealth argues that the error in the charge was harmless because the corroborative evidence introduced by the Commonwealth was so overwhelming. We cannot accept this argument, for we may not speculate as to the basis of the jury's verdict. Strong as the Commonwealth's case was, the jury was nonetheless free to reject it in its entirety and instead accept the alibi defense which Ewell tendered; it is conceivable that, absent the error in the charge, they might have done so. Moreover, under the instructions given by the court, a juror might have concluded that if he found Ewell's statement credibile on its face, he was relieved of any obligation to consider the other evidence offered by the Commonwealth. It is not for us to say what in fact happened in the jury room, or what would have happened if the jury had been correctly instructed.

It is true, as the Commonwealth points out, that no specific objection was taken to the instruction now challenged. We do not agree, however, that appellant has thereby waived this point.[5] The United States Su-

---

[4] *Commonwealth v. Broeckey,* 364 Pa. 368, 72 A.2d 134 (1950); *Commonwealth v. Divomte,* 262 Pa. 504, 105 A. 821 (1919); *Commonwealth v. Wooley,* 259 Pa. 249, 102 A. 947 (1918); *Commonwealth v. Molten,* 230 Pa. 399, 79 A. 638 (1911).

[5] This issue was raised below in argument before the court en banc, *cf. Commonwealth v. Carbonetto,* 455 Pa. 93, 314 A.2d 304 (1974), *Commonwealth v. Dancer,* 452 Pa. 221, 305 A.2d 364 (1973).

preme Court has recently placed renewed emphasis on the reasonable doubt standard by holding it to be an essential element of constitutional due process in a criminal proceeding. *In re Winship,* 397 U.S. 358, 25 L.Ed.2d 368, 90 S. Ct. 1068 (1970). The instruction challenged in the case at bar was more than just a "tangential undercutting" of this standard, such as was found in *Cupp v. Naughten,* 414 U.S. 141, 38 L.Ed.2d 368, 375 [94 S. Ct. 396, 401] (1973); it set up an entirely different criterion for determining guilt or innocence. We held in *Commonwealth v. Williams,* 432 Pa. 557, 248 A.2d 301 (1968) that an instruction which permitted a jury to find a defendant guilty when the jurors were not so convinced beyond a reasonable doubt was reversible error even in the absence of a specific exception to the charge. This is just such a case.[6] *See also Commonwealth v. Noble,* 371 Pa. 138, 142-144, 88 A.2d 760 (1952).

This is not a case in which appellant's failure to bring the error in the charge to the attention of the lower court was in any way deliberate. Defense counsel was assiduous in taking exception to a number of such alleged errors, and, in addition, submitted a correct point for charge on the evidentiary weight to be given a voluntary confession.[7] The failure to note this

---

[6] Pa. R. Crim. P. 1119(b), which became effective shortly after we heard argument in *Williams,* does not foreclose our consideration of this issue in the case at bar. *Commonwealth v. Jennings,* 442 Pa. 18, 274 A.2d 767 (1971).

[7] The submitted point for charge reads as follows: "If you decide that the defendant knowingly, intelligently and voluntarily gave the police a confession you must next decide what, if any, effect the words or statement in question should be given in this case. Then, the usual means of determining truth, falsity and believability, as I have already instructed you, should be applied to the content of the confession." The trial judge refused this point on the ground that it had already been covered in his instructions to the jury. Appellant suggests that the submission of this point for charge

particular error was as inadvertent as the trial judge's initial slip of the tongue. But we cannot sustain this verdict on the mere speculation that the jury was equally inattentive.

The judgment of sentence is reversed, and the case is remanded to the court below for a new trial.

Mr. Justice NIX concurs in the result.

Mr. Chief Justice JONES dissents.

---

preserved an exception to the instruction actually given. This point was not, however, specifically addressed to the applicable evidentiary standard, and we doubt that its refusal was sufficient in itself to relieve counsel from the obligation to take a specific exception to the charge. *Cf. Commonwealth v. Sisak*, 436 Pa. 262, 269, 270, 259 A.2d 428 (1969).

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree that appellant's conviction of murder in the first degree must be reversed and a new trial granted. In my view reversal is required because the trial judge impermissibly expressed his opinion on the degree of appellant's guilt.

I cannot, however, subscribe to the theory that this Court may, whenever so inclined, ignore the lack of specific objection to an alleged trial error. The majority's approach to appellate review, usually characterized "basic and fundamental error," is a peculiar exception to the general rule that the trial court is the proper forum for initial consideration of objections to claimed trial errors. Here, by the majority's admission, no objection was made to the instruction on burden of proof. This asserted error was, in my view, waived and may not for the first time be considered on appeal.[1]

---

[1] I have often noted my disagreement with the majority's basic and fundamental error theory and the lack of any articulated or discernable standard when the "test" should be applied. See, e.g., *Commonwealth v. Jennings*, 442 Pa. 18, 28, 274 A.2d 767, 772 (1971) (concurring opinion, joined by JONES, J.); *Commonwealth v.*

Furthermore, rule 1119(b) of the Pennsylvania Rules of Criminal Procedure is directly contrary to the majority's conclusion. That rule specifically bars appellate court consideration of allegedly erroneous jury charges when no objection is interposed at trial.

"No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."

The plain language of this rule has in the past been ignored by the majority through incantation of the shibboleth "basic and fundamental error." See *Commonwealth v. Jennings,* 442 Pa. 18, 25-26, 274 A.2d 767, 770-71 (1971). However, *Commonwealth v. Watlington,* 452 Pa. 524, 306 A.2d 892 (1973), our most recent case interpreting Rule 1119(b), gave that rule a common sense reading and applied it to bar consideration of an alleged error in the court's charge for the first time on appeal. See *Commonwealth v. Yount,* 455 Pa. 303, 318, 314 A.2d 242, 250 (1974). I adhere to this interpretation of our rule.

The majority's reaching for the burden of proof issue to which to apply its "basic and fundamental error" theory is particularly puzzling in this case. Here, an erroneous jury instruction was recognized as such by defense counsel, specifically objected to, and urged on this appeal as reversible error. This error, properly objected to and preserved for appeal by trial counsel, in my view, compels reversal.

---

*Lowery,* 440 Pa. 361, 367, 269 A.2d 724, 727 (1970) (concurring opinion, joined by JONES, J.); *Commonwealth v. Myers,* 439 Pa. 381, 385, 266 A.2d 756, 758 (1970) (concurring opinion); *Commonwealth v. Bruce,* 433 Pa. 68, 71, 249 A.2d 346, 348 (1969) (concurring opinion); *Commonwealth v. Johnson,* 433 Pa. 34, 38, 248 A.2d 840, 842 (1969) (concurring opinion); *Commonwealth v. Williams,* 432 Pa. 557, 569, 248 A.2d 301, 307 (1968) (dissenting opinion).

Instructing the jury on the degree of guilt, the trial court stated (emphasis supplied):

"If you find the defendant is guilty of murder, you must first determine the degree of murder; that is, whether it is murder in the first degree or murder in the second degree.

"I have said an unlawful homicide committed in the perpetration of or an attempt to perpetrate an arson which is a felony is murder in the first degree.

"It is my *opinion,* which is not binding upon you— I am going to repeat—which is not binding upon you, that if you find the defendant guilty of murder, you should find he is guilty of *murder in the first degree;* however, I cannot take away from you, and I do not intend to take away from you, your undoubted right that if you found the defendant guilty, to bring in a verdict of murder in the second degree.

. . . .

"I have reviewed this with you as to the definitions; however—and I repeat—an unlawful homicide committed in the perpetration of an arson, which is a felony, is murder in the first degree. It is therefore *my opinion* that if you find the defendant is guilty of what is known in the law as a felony-murder it should be *murder in the first degree*; however, *in my opinion*—and *I have my opinion,* and I have already said this before— is not binding upon you and I cannot take away from you your undoubted right to bring in a verdict of murder in the second degree against the defendant, even though you may have found in your deliberations that the murder was an unlawful homicide resulting from the perpetration of or an attempt to perpetrate an arson."

Defense counsel immediately objected, asserting that the court had effectively directed that if the jury found murder, it was murder in the first degree.

It is well settled that the propriety of a charge to the jury must be assessed by viewing the instruction as a whole. *Commonwealth v. Butler*, 442 Pa. 30, 272 A.2d 916 (1971). Even taking into account the trial judge's attempt to remind the jury that his opinion was not binding upon it, I would hold the expression by the trial judge of an opinion on the degree of guilt, if objected to, demands a new trial.

This Court has recently considered the propriety of a trial court's expressing an opinion as to the guilt of an accused. *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972); *Commonwealth v. Motley*, 448 Pa. 110, 289 A.2d 724 (1972). In each case, we reversed the murder conviction because each trial judge in his charge to the jury erroneously expressed an opinion on the guilt of the accused. We also noted the tremendous weight which jurors attach to pronouncements by the trial judge.

" 'The influence of the trial judge on the jury is necessarily and properly of great weight,' . . . and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word." *Commonwealth v. Archambault*, supra, at 95-96, 290 A.2d at 75 (quoting *Bollenbach v. United States*, 326 U.S. 607, 612, 66 S. Ct. 402, 405 (1946) (citation omitted)); see *Commonwealth v. Motley*, supra.

The analysis applied in *Archambault* and *Motley* to expressions of judicial opinions of guilt is equally applicable to judicial expressions of opinion on degree of guilt. An accused is denied the right to trial by an impartial jury whatever form the judicial usurpation takes.[2]

---

[2] Our cases to the contrary should be repudiated as were those contrary to our holding in *Archambault*. See *Commonwealth v. Archambault*, 448 Pa. 90, 95 & n.8, 290 A.2d 72, 74 & n.8 (1972). See,

The ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 5.6(a) (Approved Draft, 1972), emphasizes that the trial judge's proper role does not include the expression of personal opinions.

"The trial judge should not express or otherwise indicate to the jury his personal opinion whether the defendant is guilty or express an opinion that certain testimony is worthy or unworthy of belief."

In view of the devastating impression a trial judge's opinion makes on a jury, I do not find the cautionary instructions in the instant case sufficient to make the error harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824 (1967); *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973); *Commonwealth v. Padgett,* 428 Pa. 229, 237 A.2d 209 (1968); *Commonwealth v. Pearson,* 427 Pa. 45, 233 A.2d 552 (1967). See ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 5.6(a) and Commentary at 69 (Approved Draft, 1972).

Thus while I concur in the grant of a new trial, I confine myself to consideration of the error to which specific objection was taken. I would reverse appellant's conviction on the basis of the prejudicial expression by the trial judge of his personal opinion on the degree of appellant's guilt.

Mr. Justice MANDERINO joins in this concurring opinion.

---

e.g., *Commonwealth v. Wilson,* 431 Pa. 21, 244 A.2d 734 (1968), cert. denied, 393 U.S. 1102, 89 S. Ct. 901 (1969); *Commonwealth v. Chavis,* 357 Pa. 158, 53 A.2d 96 (1947); *Commonwealth v. Sheets,* 197 Pa. 69, 46 A. 753 (1900).