## Green *versus* Commonwealth.

1. Where in the trial of an indictment for murder the evidence showed that the prisoner had had time to act deliberately, and had not acted under a sudden gust of passion, and it appeared that he had been on very bad terms with the deceased: *Held*, that all the ingredients of murder in the first degree were proved, and the case was properly submitted to the jury.

2. The facts in evidence in this case did not raise such a strong and reasonable doubt as ought to have required an acquittal.

3. Where a point was affirmed, but a qualification was added, which, though perhaps doubtful, when taken by itself, yet taken in connection with the context and the general charge, was not likely to have misled the jury, this court will not reverse.

4. If there be time to frame in the mind fully and consciously the intention to kill, and to select the weapon or means of death, and to think and know beforehand (though the time be short) the use to be made of it, there is time to premeditate and deliberate.

November 10th 1876. Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS and MERCUR, JJ., absent.

[Green *v.* Commonwealth.]

Error to the Oyer and Terminer of *Allegheny county :* Of October and November Term 1876, No. 209.

Indictment against William Green for the murder of Samuel Marshall at Mansfield, in Allegheny county, on September 2d 1875. The facts together with the defendant's first point appear in the opinion of the court. The learned judge (Sterrett, P. J.) charged, *inter alia,* as follows :—

" He who takes the life of another with a deadly weapon and with a manifest design thus to use it upon him, with sufficient time to deliberate and form the conscious purpose of killing, and without any sufficient reason or cause of extenuation, is guilty of murder of the first degree.

" When the act is done deliberately with a deadly weapon, and is likely to be attended with dangerous consequences, the malice, requisite to murder, will be presumed; for the law infers that the natural or probable effect of any act, deliberately done, is intended by the actor. Where the killing, then, is malicious and the evidence shows a wilful, deliberate and premeditated purpose to take life, it is murder of the first degree.

" All murder, not of the first degree, is necessarily murder of the second degree, and includes all unlawful killing under circumstances indicating depravity of heart, and a disposition of mind, regardless of social duty, where no intention to kill exists or can reasonably be inferred. Therefore in all cases of murder, if no intention to kill can be inferred or collected from the circumstances the verdict must be murder of the second degree.

" Manslaughter may be defined to be the unlawful killing of another without malice, express or implied, which may be voluntarily done in a sudden heat of passion, or involuntarily, in the commission of an unlawful act. Voluntary manslaughter often so nearly approaches murder that it is necessary to distinguish it clearly. The difference is this : Manslaughter is never attended by legal malice or depravity of heart, that condition or frame of mind before spoken of, exhibiting wickedness of disposition, recklessness of consequences or cruelty. But being sometimes a wilful act, as the term voluntary denotes, it is necessary that the circumstances should take away every evidence of cool depravity of heart or wanton cruelty. Therefore to reduce an intentional blow, stroke or wounding, resulting in death, to voluntary manslaughter, there must be sufficient cause of provocation, and a state of rage or passion, without time to cool, placing the accused beyond the control of his reason and suddenly impelling him to the commission of the deed. If any of these be wanting—if there be provocation without passion, or passion without legal provocation, or if there be time to cool and reason has resumed its sway, the killing will be murder. But it is not every cause of provocation that is regarded as sufficient or legal. Insulting or scandalous words are not sufficient cause of provocation ; nor are actual indig-

nities to the person of a slight and trivial nature.　Whenever the act evidences a deadly revenge, and not the mere heat of blood: whenever it is the result of a devilish disposition, and not merely the frenzy of rage, it is not manslaughter, but murder.　Passion arising from adequate legal provocation is evidence of the absence of malice."

The jury found a verdict of guilty of murder in the first degree. After sentence of death was pronounced thereon, the defendant took this writ of error, assigning for error that the record and evidence failed to show that the ingredients necessary to constitute murder in the first degree were proved to exist, and the refusal of the court below to affirm the latter part of the defendant's first point.

*J. C. Graham* and *J. H. Baldwin*, for the plaintiff in error.— The evidence shows that there must have been a conflict; and if so, the verdict of murder in the first degree was not justified by the facts.

The first point was in the exact language of the charge in Commonwealth *v.* Drum, 8 P. F. Smith 9.

If the act was done in a moment of impetuous rage or passion, the offence was murder in the second degree: 2 Whart. Crim. Law, §§ 932, 935, 944, 978; Hopkins *v.* Commonwealth, 14 Wright 9; Kilpatrick *v.* Commonwealth, 7 Casey 202.

*T. M. Bayne* (with him *E. A. Montooth*, District Attorney), contrâ.

Chief Justice AGNEW delivered the opinion of the court, November 20th 1876.

Upon a careful examination of the evidence in this case, we find that all " the ingredients necessary to constitute murder in the first degree were proved to exist."　The prisoner and the deceased had been upon bad terms and involved in litigation immediately before the homicide.　The former, on the next morning after the lawsuit, had threatened the life of the latter.　In the evening of the killing he stopped before the door of the house where the deceased was sitting at supper, and asked the latter what he was going to do about the potatoes, a subject of difficulty between them.　This led to an angry altercation, the deceased using bad language and threatening to give the prisoner a good pounding.　The prisoner having started up the road toward home, saying he would bring suit next day, the deceased ran back to the fireplace, picked up a poker, and running out of the house, called to the prisoner to come back, saying if he came he would not go away alive.　The prisoner, then being some yards up the road, said, " I will come," and started toward the deceased, and before reaching him levelled

[Green *v.* Commonwealth.]

at him a gun he had been carrying in his hand.   The latter said, "Shoot, if you want to."   At the same instant the report and flash of the gun were heard and seen.   The deceased fell near the spot where he stood before the house; the sound of a heavy blow was heard, and very soon the prisoner started off toward home. The deceased was found with a large gash in his head; a piece of the gun-barrel, about one foot long, was shortly afterwards found near by, and the broken gun carried off by the prisoner found at his house on the same evening.   No one saw the blow struck, yet the sound of it, the broken piece near the spot, the fractured gun, and the cut in the head of the deceased, leave no doubt of the fact. Nor is it very material where and how precisely the blow was struck, as the evidence, beyond a question, proves that the gun was fired before the prisoner reached the deceased, and the bullet-wound was the undoubted cause of death.   Still the fact of the blow is important in determining the state of the prisoner's mind and his disposition toward the deceased.   Had the conflict and the blow occurred before the shooting, a different case would have been presented bearing on the prisoner's state of mind and intention.   But here one whose mind had before been inflamed toward the deceased, who had threatened him, levelled a loaded gun and fired at him, at some distance and before the latter had committed an assault upon him, or could have reached him with the poker held in his hand, and found still in it when carried into the house.

It is evident, therefore, that there was ample time for the prisoner to frame in his mind the deliberate purpose to shoot the deceased, and to carry this intent out, by levelling his gun and discharging it, when told to shoot.   It is no doubt true that he was also irritated by the very bad language of the deceased; but this was no sufficient cause of provocation for taking life; while the turning back of the prisoner, when called to come back, his expression as he turned—"God damn your wicked heart, I have been waiting for that," walking back toward the deceased, levelling the gun at him, and shooting at the instant the deceased told him to shoot, all evidence a sufficient time to act deliberately, and not under a sudden gust of passion, tearing up reason by the roots, and urging him on to a rash and thoughtless deed.   These facts, together with the previous state of the prisoner's feelings toward the deceased (his half brother), clearly presented a case where the ingredients of murder in the first degree were proved to exist, and, therefore, must be submitted to the jury for their judgment.   Nor can we say that there was such a strong and reasonable doubt of their existence as to require an acquittal.

But one other assignment of error is worthy of notice.   The prisoner's first point is that "to constitute murder in the first degree there must be a design and intention to kill at the time the homicidal act is committed, and this intention must be a fully formed

[Green *v.* Commonwealth.]

purpose to kill with so much time for deliberation and premeditation as to convince the jury that this purpose is not the immediate result of rashness and impetuous temper." The answer affirmed the point in its own language nearly, and the judge added, " but the purpose to kill necessary to constitute murder in the first degree, may sometimes be ' the immediate result of rashness and impetuous temper.' A rash and impetuous temper is no excuse, unless it has been aroused by adequate legal provocation, as explained in the general charge, and the intention to kill has been formed in the heat of passion thus generated." The first clause of the qualification is perhaps doubtful, yet in view of the whole sentence and of the reference to the explanation given in the general charge, relating to the crime of manslaughter, as an offence committed under provocation and passion, we are led to believe that the qualification contained in the answer was intended to guard the jury against a mistake by which they might reduce the offence from murder to manslaughter, in the absence of a *legal* provocation, there being a seeming provocation in the bad language of the deceased. In this view we may reasonably conclude that the jury were not misled by the seeming inaccuracy of the first clause in the qualification of the answer. The general charge correctly set before the jury the distinctions in regard to homicide, and drew their attention to the difference between murder and manslaughter.

The point, however, was not intended to bring this distinction into view, but rather the frame of mind necessary to the commission of murder in the first degree; that is the deliberation and premeditation which the Act of Assembly makes essential to the crime of murder in the first degree. So far as impetuous rage and rashness followed by the immediate act which takes away life, tend to deprive the prisoner of deliberation and premeditation, and to reduce the homicide from murder in the first to murder in the second degree, the point was pertinent; for it was for the jury judging upon the evidence to determine whether the act was a result of a deliberate and premeditated purpose to kill. The time may be short, yet a jury may find that the fully conscious purpose to kill existed. Yet if, on the other hand, by reason of the shortness of the time and the presence of great rage produced on the instant, and in a moment of impetuous temper, a blow is given, a jury may be convinced that it was not the result of a fully formed purpose to kill, but of a rash and hasty impulse, with scarcely a consciousness of any purpose except to do bodily harm to the object of wrath. Hence, though the absence of a legal provocation may prevent the reduction of the crime from murder to manslaughter, the want of the deliberation and premeditation required by the law may reduce the grade of the murder from the first to the second degree.

If, therefore, the learned judge intended the qualification in his answer to the first point, to apply to the point itself, it would be

[Green *v.* Commonwealth.]

inaccurate. But his reference to his general charge conveys the impression that he intended only to guard the jury against a misapprehension, reducing the offence to manslaughter in the absence of a legal provocation. This acquires strength when we remember the facts of the homicide. The prisoner returned at the call of the deceased, and before reaching him, levelled his gun and fired, and this too after the expression, "God damn your wicked heart, I have been waiting for that," excited by the call; no doubt, he was angry and provoked by the threats of the deceased; but his anger was the offspring of hate and revenge, and not of that hasty and impetuous rage, which for the instant dethrones reason and impels to the commission of an act of violence, with scarcely a consciousness of its own real purpose. To use the language in Drum's case, 8 P. F. Smith 16, the law regards and the jury must find the actual intent, that is, the fully formed purpose to kill, with so much time for deliberation and premeditation, as to convince them that this purpose is not the immediate offspring of rashness and impetuous temper, and that the mind has become fully conscious of its own design. If there be time to frame in the mind fully and consciously the intention to kill, and to select the weapon or means of death, and to think and know beforehand (though the time be short) the use to be made of it, there is time to deliberate and premeditate.

Upon the whole case we discover no substantial error. The judgment of the court of Oyer and Terminer is affirmed, and it is ordered that the record be remitted for the purpose of execution.