# Commonwealth v. Santos, Appellant.

*Criminal law—Murder—Evidence—Threats — Intention — Self-defense—Suicide—Declarations of deceased—Remoteness—Discretion of court—Mental unsoundness—Hearsay—Res gestæ—Expert testimony—Degree—Charge—Appeal.*

1. Where one accused of homicide pleads self-defense, he may introduce evidence of communicated threats made against him by the deceased, or even of uncommunicated threats, where it is sought to show an intention of the deceased from which it may be inferred he was the aggressor.

2. Where self-destruction of deceased is set up as a defense, the accused should be permitted to introduce declarations made by the alleged victim reasonably close to the time of her death, evincing an intention to take his own life, and particularly is this true where the circumstantial evidence in the case is consistent with the defense.

3. Where the physical facts attending an alleged murder are not irreconcilable with the theory of suicide, relied on as a defense, proof of an attempt on the part of the deceased to take her own life, may properly affect the minds of the jury in passing on the probability of her having done so; hence evidence to prove such a design is material and admissible.

4. Evidence of such kind when not introduced to prove directly the truth of matters therein asserted, but merely to show declarations alleged to be relevant as the basis of an inference to be drawn therefrom, is admissible without reference to the hearsay rule.

5. In a murder trial, it is proper for the court to permit certain witnesses for defendant to testify that shortly before the day of the killing, deceased declared his intention of shooting the accused, and then killing himself.

6. Such testimony is proper, not because the declarations contained therein either accompanied or tended directly to prove the ultimate acts involved in the case, but because they may help to show the declarant's state of mind or intention.

7. In a murder trial, the court has wide, though not absolute, discretion to refuse to admit declarations of intended suicide if it considers them too remote.

8. While the ordinary rule in civil cases is that where an offer blends irrelevant and inadmissible matter with a matter relevant and admissible, its rejection as a whole is not error, yet this principle ought not to be summoned to sustain a ruling prejudicial to the interests of a defendant in a murder trial.

9. Even though it be claimed by the prosecution that the physical facts attending an alleged murder are irreconcilable with the theory of suicide, set up by defendant, what is otherwise competent evidence, duly offered to prove that theory, may not be rejected.

10. When evidence is rejected under circumstances such as referred to in paragraph 9, on review, the appellate court must put itself in the position of the trial judge when the offer under consideration was made, and, in order to decide the admissibility of the testimony tendered, it must look at all evidential matters then on the record in such light favorable to defendant as it is reasonably conceivable the jury might have viewed them in connection with the proffered testimony had it been received.

11. In a murder trial, an examining physician, who has qualified as an expert, may give his views as to the direction and distance of the shot, as well as the position of the parties.

12. On such trial, defendant is entitled to show, by way of defense, that prior to the killing he was attacked by the deceased, without provocation, and received such injuries as to dethrone his reason and render him irresponsible.

13. On the trial of an indictment for murder, where there is evidence from which the jury might find that the accused at the time of the killing was deranged by a bullet wound inflicted by the deceased, it is reversible error for the court to charge that the fact of killing, together with an absence of malice, required a verdict of voluntary manslaughter.

14. Such an instruction deprived the jury of the right to acquit, if satisfied that defendant killed without motive, and without mental capacity to appreciate what he was doing.

15. In a murder trial the court should not accentuate the elements of deliberation and premeditation, necessary to the capital offense, at the expense of the true criterion of the first degree, which is intent to take life.

16. Even in murder committed by the use of a deadly weapon upon a vital part of the body, the degree of the crime is for the jury.

Argued October 9, 1922. Appeals, Nos. 119 and 120, Oct. T., 1922, by defendant, from judgments of O. & T. Allegheny Co., Nov. T., 1921, Nos. 44 and 46, on verdicts of guilty of voluntary manslaughter, in cases of Commonwealth v. Lawrence Santos. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Indictments for murder. Before SWEARINGEN, J.

The opinion of the Supreme Court states the facts.

At the trial William Bibbs was recalled on behalf of defendant and testified as follows:

"Q. You have testified that you knew Mrs. Nadab, the deceased. A. Yes, sir. Q. Had you had occasion to have a conversation with her shortly before August 13, 1921? A. I had. Q. And was that conversation with reference to the defendant? A. Well, she asked me— Q. Just answer the question that he asks. A. Yes, sir.

"By Mr. Meyers: Before we proceed further with this witness, I ask that an offer be made at side-bar.

"By Mr. Glick: [Not within the hearing of the jury.] If your honor please, I expect to show by the testimony of this witness that during the conversation with the deceased, she had told him that unless the defendant mended his ways and ceased from cheating and defrauding her she would kill him, and, further, so far as she was concerned, she had seen enough of life and after she had killed him she would kill herself.

"By Mr. Meyer: Objected to, unless it is shown by competent testimony that this threat made by Mrs. Nadab was communicated to defendant prior to the occurrence on August 13, 1921, at 2931 Wylie Avenue, in which she lost her life. It is further objected to for the reason it is irrelevant and immaterial to the issues now on trial. Objection sustained. Exception noted." (1)

Sylvester Foskey, a witness called on behalf of the defendant, testified as follows: "Q. During the time you were working in this storeroom, Mr. Foskey, did you have any conversation with Mrs. Nadab, the deceased? [Editor's note. The time of this conversation was fixed as the latter part of the month of July, or the early part of August.]    A. Yes, sir.

"By Mr. Meyer: I ask for an offer at side-bar.

"By Mr. Glick: Defendant will show by this witness that during a conversation with deceased, she told him that unless he, defendant, Lawrence Santos, would change his ways or cease to rebuke her about drinking and attempt to dissolve the partnership she would finish him, and so far as she was concerned she didn't care what happened to her.

"By Mr. Meyer: Objected to as irrelevant and immaterial unless followed by testimony showing that this conversation was reported to defendant. Objection sustained. Exception noted."    (2)

Verdict of guilty of voluntary manslaughter in both cases. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence, and (3) sentence, quoting record.

*A. C. Christiansen,* with him *George W. Allen,* for appellant.—Proofs of uncommunicated threats should have been received: Com. v. Keller, 191 Pa. 122; Com. v. Principatti, 260 Pa. 587.

*John D. Meyer,* Assistant District Attorney, with him *Harry H. Rowand,* District Attorney, for appellee, cited: Nevling v. Com., 98 Pa. 322.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1923:

Lawrence Santos appeals from sentences on two convictions of manslaughter; both cases, having been tried

in the court below and presented to us as one, will be so disposed of in this opinion.

(a) The defendant and Kate Nadab, hereinafter called the deceased, conducted, at 2931 Wylie Avenue, Pittsburgh, a small store, which was connected by a swinging door with a sleeping chamber in the rear, and behind this was a kitchen. Late in the afternoon of August 13, 1921, Santos entered the building; shortly afterwards several shots were heard. No one witnessed the shooting, but those who first reached the premises found defendant on the floor of the store near the door leading to the bedroom, with two wounds in his head, one of which was caused by a bullet that had "penetrated the outer table of the skull, shattered the inner table, and was lying on the [covering] of the brain." The dead body of Mrs. Nadab was in the bedroom, with three wounds upon it: a hæmatoma on the top of her head, about three inches in diameter, under which was a fracture of the skull three inches long; a bullet had entered her head near the left temple, passed into the brain and lodged in the cerebellum; and she had a compound fracture of the middle third of the right tibia. Her five-year old boy, with his heart pierced by a bullet, was near by. After Mrs. Nadab's body had been rolled over by the opening of the door, a revolver was discovered not far from her right hand; this was the property of defendant, who testified he kept it in one of the store drawers. On indictments for the murder of the two deceased persons, Santos pleaded not guilty, and his counsel set up as defenses that, either Kate Nadab had shot him and the child, and then committed suicide, or a shot fired by her had entered his head, rendering him irresponsible, and, not knowing what he was about, he had shot her and, possibly the child; the Commonwealth does not deny that deceased may have shot defendant; its theory is that Santos struck Mrs. Nadab, who, to defend herself, shot him, and he then killed her and the child.

(b) The only assignments of error are to the sentences, and the refusal of the trial judge to permit certain witnesses for defendant to testify that, shortly before the day of the fatal encounter, Mrs. Nadab declared her intention of shooting the accused, and then killing herself.

(c) The proffer of evidence contained in the second assignment is somewhat vague (cf. paragraph r, infra), and, considered alone, it may be objectionable in part from that standpoint, but the meaning of the words sought to be introduced, as used by deceased, are made plain by the offer contained in the first assignment, which is sufficiently clear; this may be seen by the text of the several tenders of proof printed in the notes of the reporter, preceding this opinion.

(d) The law seems established that, where one accused of homicide pleads self-defense, he may introduce evidence of communicated threats made against him by the deceased (Com. v. Principatti, 260 Pa. 587, 594), or even of uncommunicated threats, where it is sought to show an intention of the deceased from which it may be inferred he was the aggressor: Com. v. Keller, 191 Pa. 122, 132. In the instant case, although there is no contention or evidence that Santos acted in self-defense, or that deceased's alleged threat to kill defendant had been communicated to him, nevertheless, since one of the defenses was that Mrs. Nadab attacked the accused, committing injuries which rendered him mentally irresponsible, and that, while in this condition of mind, he killed her and the child, it was just as important, in order to prove this state of affairs by circumstantial evidence, to show facts from which it could be inferred that the deceased was the aggressor as though self-defense were set up; and a like rule, as to the admission of evidence, should apply. The prosecution cannot keep out such evidence as here offered by failing to dispute, or even by conceding, the bare fact that deceased attempted to kill defendant; in the first place, that fact does not show who

was the aggressor, and, next, the accused is entitled to prove his defense in his own way. While the matter in hand will be taken up again, later on, when dealing specifically with the second assignment of error (paragraphs r, t, u, infra), it is unnecessary, under the view we entertain of the proffered testimony, to decide the case on the theory of uncommunicated threats, for evidence such as that here in question is certainly admissible on the issue of deceased's alleged suicide.

(e) The great weight of authority and reason demand that, in a trial for homicide where self-destruction of deceased is set up as a defense, the accused should be permitted to introduce declarations, made by the alleged victim, reasonably close to the time of her death, evincing an intention to take her own life; and particularly is this true where, as in the present case, the circumstantial evidence is consistent with the defense: Com. v. Trefethen, 157 Mass. 180, 188, 31 N. E. 961 (overruling a prior decision to the contrary); State v. Kelly, 77 Conn. 266, 268, 58 Atl. 705; Nordan v. State, 143 Ala. 13, 26, 39 So. 406; Boyd v. State, 82 Tenn. 161, 175; Blackburn v. State, 23 Ohio St. 146, 165; State v. Ilgenfritz, 263 Mo. 615, 632, 173 S. W. 1041 (overruling some earlier decisions; see Ann. Cas. 1917 C, 366); State v. Beeson, 155 Ia. 355, 362, 136 N. W. 317; Ann. Cas. 1914 D, 1275; People v. Conklin, 175 N. Y. 333, 343, 67 N. E. 624, 627; Wigmore on Evidence, section 143.

(f) The reason for admitting evidence like that contained in the assignments before us is this: Where the physical facts attending an alleged murder are not irreconcilable with the theory of suicide, relied on as a defense, proof of an intent on the part of the deceased to take his own life might properly affect the minds of the jury, in passing on the probability of his having done so (Wigmore on Evidence, section 102); hence the existence of such a design becomes material, and evidence tending to prove it is admissible.

(g) Testimony of the kind under discussion,—when not introduced to prove directly the truth of matters therein asserted, but merely to show declarations alleged to be relevant as the basis of an inference to be drawn therefrom,—is admissible, without regard to the hearsay rule: State v. Ilgenfritz, supra; Sutter v. State, 102 Neb. 321, 167 N. W. 66; Wigmore on Evidence, section 1768. For instance, in this case the evidence in question is admissible because suicidal intent, like any other purpose, is a mental condition, which can manifest itself, primarily, only through some act or word of the person in question; hence relevant acts or words may be proved as the basis of an inference that the state of mind, or intention, in question did in fact exist, from which fact, and others in the case (Wigmore, section 1726), the conclusion may be drawn that the design contended for had been carried into execution. The principle involved is thus stated in Com. v. Trefethen, 157 Mass. 180, 186: "An intention in the mind of a person can be shown only by some external manifestation, which must be some look or appearance of the face or body, or some act or speech; and proof of either or all of these, for the sole purpose of showing state of mind or intention of the person, is proof of a fact from which the state of mind or intention may be inferred." See also Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 295, 12 Sup. Ct. Rep. 909.

(h) The offers before us should have been received as proper evidence, not because the declarations contained therein either accompanied or tended directly to prove the ultimate acts involved in the case, but because they may help to show the declarant's state of mind, or intention; which, as before said, is of itself a distinct and material circumstance, properly helpful in deciding whether that intention was, in fact, ultimately carried out: Mutual Life Ins. Co. v. Hillmon, supra; Com. v. Trefethen, supra.

(i) The learned court below says there was no offer to prove, definitely, when the two rejected declarations were uttered; but the evidence, immediately preceding the proofs tendered, shows that, on one occasion the statement in question was made "shortly before August 13, 1921" (the date of the deaths), and, on the other, in "the latter part of July or the early part of August." Neither of these times is so remote as to warrant the exclusion of the proffered testimony on that score: Com. v. Principatti, 260 Pa. 587, 595; Com. v. Salyards, 158 Pa. 501, and cases supra. On this subject, Mr. Wigmore is of opinion the remoteness of any declaration goes to its weight only, and not to its competency, as evidence (Wigmore on Evidence, section 143; see also Sutter v. State, 102 Neb. 321, 167 N. W. 66; Blackburn v. State, 23 Ohio 146); but, be that as it may, the weight of judicial authority is that the trial judge has wide, though not absolute, discretion to refuse to admit declarations of intended suicide, if he considers them too remote: Com. v. Trefethen, supra; People v. Conklin, supra; State v. Kelley, supra; Hale v. Life, Ind. and Investment Co., 65 Minn. 548, 551. In the present instance, the testimony offered was not objected to on the ground of remoteness; we treat of the matter because it is referred to in the opinion of the court below and may arise at the next trial.

(j) Since the case must go back to a jury, there is one other point, in connection with the defense of suicide, which calls for notice. If it be contended that the offers should be rejected because certain portions of them are irrelevant, it may be answered, we expressed our opinion on a similar contention in Com. v. Colandro, 231 Pa. 343, 348, saying: "While the ordinary rule [in civil cases] is that, where an offer blends irrelevant and inadmissible matters with a matter relevant and admissible, its rejection as a whole is not error, yet......this principle......ought not to be summoned to sustain a ruling prejudicial to the interests of a defendant on trial

for murder; [in such case], so much of an offer as is relevant should be admitted, [and] the fact that some inseparable, incidental collateral facts, irrelevant in themselves and prejudicial to the prosecution, might thus be caused to appear, would not make the competent part any the less admissible......The possibility of prejudice can be sufficiently cured by restricting the use [of the testimony]." Here the only parts of the offers which properly could be accounted prejudicial to the prosecution are the uncommunicated threats of deceased to kill defendant, and, as said earlier in this opinion (paragraph d, supra), they may be introduced as relevant to the defense that deceased was the aggressor; although we are now considering the admissibility of the rejected evidence solely as tending to support the defense of suicide.

(k) The Commonwealth contends, however, that, albeit rules and general principles may be cited to justify accepting evidence of the character here offered, yet, where the physical facts attending an alleged murder are irreconcilable with the theory of suicide, then the rejection of such testimony is warranted; and this (assuming, but not deciding, the suggested rule to be controlling) brings us to the question of how far the rule thus contended for is applicable to the instant case, as it is brought before us by the present record.

(1) Before examining the proofs, to answer the question just put, it may be well to state the principles which must guide us in this regard. The general rule is, On an appeal from a judgment entered on the finding of a jury, the whole body of the evidence must be viewed in the light which best supports the verdict, all inferences being drawn and doubts resolved in such way as will sustain that conclusion; but this rule does not apply where, as here, we are seeking to see whether error was committed by the rejection, on the principle suggested by the appellee (indicated in the immediately preceding paragraph), of what was otherwise competent evidence, duly

offered.  Under such circumstances, we must put our-
selves in the position of the trial judge at the time the
offer under consideration was made, and, in order to
decide the admissibility of the testimony tendered, we
must look at all evidential matters then on the record
in such light, favorable to the defendant, as it is reason-
ably conceivable the jury might have viewed them, in
connection with the proffered testimony, had it been
received.  With this rule in mind, we shall now examine
the uncontested proofs to see whether they,—particu-
larly considering the physical facts attending the shoot-
ing of deceased,—can justifiably be classed as irrecon-
cilable with the defenses sought to be supported by the
rejected evidence.

(m) As previously said (paragraph a, supra), de-
fendant is the only living witness to the shooting; aside
from his assertion that, owing to the dazed state of his
mind at the time of the killing, he did not know how it oc-
curred, and certain expert testimony put in by both sides,
the evidence is purely circumstantial.  While the cir-
cumstantial proofs may be accepted as in a measure
corroborative of the state's theory, they are, also, not
wholly inconsistent with the defenses interposed by the
accused; so far as these defenses are concerned, there is
no way of telling just when or how the various wounds
on the body of deceased were received or the manner of
her killing, to a degree of certainty which warrants the
decision of those points as matters of law, and the ex-
perts produced at the trial differ in reference thereto.
Hence we say the circumstantial proofs, even with the
explanatory opinion testimony, are not irreconcilable
with the theories of the defense, and cannot exclude other
evidence offered to sustain such theories, unless the
opinions of the physician who performed the autopsy
are to be taken as conclusively removing all possibility of
self-destruction of deceased and as warranting the court
in ruling that the suicidal theory, set up by the defense,
was untenable,—for what this witness said is the only

thing on which the court below could base its view as to there being on the record "very clear evidence that Mrs. Nadab could not have fired the shot which killed her."

(n) The physician in question testified that the bullet penetrated deceased's head "at the outer angle of the left eye, right in the temple region......and went directly backward, inward and downward, lacerating the brain, the cerebral sinus, and the cerebellum"; that powder marks appeared around the wound, although their extent was rendered uncertain by the fact that she was a colored person. He stated, first, that powder burns could be recognized; then, that there were none. From his examination of the entrance wound and path of the bullet in the head of deceased, this doctor was asked to give his opinion as to the direction from which the bullet had been fired; he indicated a view, but said, also, that the bullet had been badly scored by a bone and deflected from its course, so that it would be "pretty hard to tell from what direction it was coming." This witness, when asked his opinion as to the distance from the muzzle of the pistol, at the moment of discharge, to the place of entry of the bullet into Mrs. Nadab's head, gave conflicting answers at different stages of his testimony, first saying "at least two feet," then replying in the affirmative to the question "Not less than six inches and about two feet away?" and, finally, on cross-examination, he said "not less than sixteen [inches]." He further testified that, in his opinion, it would be impossible to determine, from an examination of the wounds, whether deceased was lying or standing when she was shot.

(o) Were the above opinions of the examining physician properly admissible, and if so, do they, together with his uncontradicted testimony on which they are partly based and the undisputed physical facts in the case, clearly brand the suicidal theory as impossible?

(p) There is a divergence of view among the authorities as to whether or not, in a murder trial, opinion testi-

mony concerning the distance covered by a bullet which killed the deceased, the direction from which it came, and the position of the body of the victim when struck, may be introduced in evidence. Some courts have ruled such proofs to be inadmissible: Price v. U. S., 2 Okl. Cr. Ct. 449, 101 Pac. 1036; People v. Milner, 122 Cal. 171, 54 Pac. 833; Dumas v. State, 159 Ala. 42, 49 So. 224. Other courts permit a physician, who has examined the wound, to give his opinion concerning the direction from which the blow or shot came, but not the probable position of the parties: Kennedy v. People, 39 N. Y. 245, 255, 256; Perkins v. Ohio, 5 Ohio Cir. Ct. 597. The weight of authority seems to be that the examining physician, who has qualified as an expert, may give his views both as to the direction and distance of the shot, as well as the position of the parties (on direction, see Hopt v. Utah, 120 U. S. 430; N. Y. and Ohio cases next above; as to distance, see State v. Asbell, 57 Kan. 398, 409; Boyd v. State, 82 Tenn. 161, 169, 173; Preeper v. The Queen, 15 Can. Sup. Ct. Rep. 401; as to position of body, see Com. v. Dorr, 216 Mass. 314, 317, 103 N. E. 902; Wharton on Homicide, 3d ed., section 609, and cases there cited; on all three points, see 12 Am. & Eng. Enc. Law, p. 449); but even those courts which consider proofs of this character admissible, recognize that it is the province of the jury to determine what weight shall be given to such opinion evidence (see authorities last cited), which, of course, must be the case.

(q) Since it is difficult for a professional witness to express, in a way intelligible to the lay mind, all the detailed facts which combine to form his estimate of a situation of the character we have been discussing, and, as the views of such a one, when properly qualified, are helpful to the jury, his opinions may well be accepted; but, in the light of all the testimony given at the trial of the present case by the physician who performed the autopsy, and of the limitations which he himself imposed on his opinions, the court could not say, as a matter of

law, that the theory of suicide was impossible, and take that issue from the jury. Therefore, failure to admit the declaration contained in the first assignment was error, which entitles defendant to a new trial.

(r) It is not clear that the comparatively vague assertions (cf. paragraphs b and c, supra) contained in the second assignment can be given the same consideration, in connection with the theory of suicide, as is due to the plainer declaration called to our attention by the assignment just disposed of; but this second declaration contains matter which is relevant to the other defense,— that Mrs. Nadab attacked Santos, without provocation, committing such injuries as to render him irresponsible, before he killed her and the child, if he did kill them. This defense is in some respects novel, but, after all, amounts to no more than a plea of insanity at the time of committing the alleged crime, which is a well recognized defense.

(s) In Commonwealth v. Calhoun, 238 Pa. 474, 488, we affirmed an instruction of the trial judge "to the effect that the prisoner had made out a defense that called for an acquittal, if the jury found from the fair preponderance of the evidence that, at the time of the homicide, he was so mentally deficient that he did not know what he was doing, or that he did not realize the nature or appreciate the consequences of the act he was committing."

(t) The principle involved in the defense we are now considering was applied in People v. Button, 106 Cal. 628, 39 Pac. 1073, where the defendant had first assaulted the deceased, and inflicted injuries which rendered him so irresponsible that he pursued defendant with a deadly weapon; whereupon the latter, who had endeavored to retreat and give notice of withdrawal from the affray, shot his pursuer. On conviction of manslaughter, and appeal, the court held that deceased, being deprived of his reasoning faculties, was irresponsible for his murderous pursuit, and, defendant, being the aggressor, was precluded from setting up self-defense.

(u) In the case before us, there was other testimony to corroborate defendant's assertion as to his mental condition; the staff physician of the hospital to which he was taken after the fatal encounter stated that, on the evening of his arrival, the accused was not perfectly conscious, and had concussion of the brain; the X-ray specialist, who took radiographs of the skull of Santos on the same evening, gave evidence which tended to support this testimony; and the medical interne said it was not until "the third day after an operation [that] he was returning to normal." Defendant was entitled to have this evidence considered in connection with that contained in the offers now under review; hence we also sustain the second assignment of error.

(v) The only remaining assignment is the general one complaining of the judgment, or sentence, which, as already indicated, will have to be set aside; but, inasmuch as the record must go back to the court below, we deem it wise, when sustaining this assignment, to point out several errors in the charge of the learned trial judge which should be avoided at the next trial. After discussing the elements of murder at common law and under our statute, and reviewing the evidence in the case, the court ended its charge as follows: "If, however, you should be satisfied that [defendant] killed her, but that there was no malice present, then you should find him guilty of voluntary manslaughter; if you find he did not kill her at all, then you should find him not guilty, and the same verdicts you will render for the same reasons in the other indictment, wherein he is charged with killing Frederick Nadab." While it is true the element of malice, essential to murder, is lacking in voluntary manslaughter, yet in this case it was wrong to charge that the fact of killing, together with an absence of malice, required a verdict against defendant. The above-quoted instruction, indeed the entire charge, overlooked the defense that, if accused killed deceased, it was at a time when his reason was dethroned by the bul-

let wound in his head; it, in effect, deprived the jury of the right to acquit, if satisfied that defendant killed without malice and without mental capacity to appreciate what he was doing. If the killing was done by defendant, without malice, while in a state of passion, from either anger or fear, caused by sufficient provocation, it would be manslaughter (Pennsylvania v. Bell, 1 Add. 156; Com. v. Drum, 58 Pa. 9, 17; Com. v. Colandro, 231 Pa. 343, 350); but, if done without malice or passion, while in a state of mental incapacity to realize what he was about, it would certainly not be manslaughter, or a crime of any kind. Then, that part of the instruction which tells the jury to "render the same verdict for the same reason in the other indictment, charging defendant with killing Frederick Nadab," will not do. There is very little evidence, and that of a purely circumstantial nature, tending to prove defendant shot the boy, and the jury should be given the opportunity to separately consider this indictment, and to return a different verdict thereon from that rendered on the first charge, if it sees fit so to do. Finally, the Commonwealth pressed for a conviction of murder, and, in charging on the degree of this crime, the trial judge rather accentuated the elements of deliberation and premeditation, necessary to the capital offense (section 74, Act of March 31, 1860, P. L. 382, 402), at the expense of the "true criterion of the first degree," which is the "intent to take life" (Keenan v. Com., 44 Pa. 55, 56; Com. v. McManus, 143 Pa. 64, 77, 84); he failed to make clear the sort of deliberation and premeditation required (Keenan v. Com., supra, 56-7; Wharton on Homicide, 3d ed., section 113, p. 161; and see charge of Judge WOODWARD in Com. v. Klose, 4 Kulp, 111, 114), and that they must be connected with the carrying into execution of a fully conscious, no matter how hastily formed (Com. v. Buccieri, 153 Pa. 535, 541), purpose to kill (Johnson v. Com., 24 Pa. 386, 389), not merely a design to do great bodily harm, which is a mark of the second degree:

Com. v. Drum, 58 Pa. 9, 23; Green v. Com., 83 Pa. 75, 79, 80; and see Com. v. Klose, supra, 115, 117. If it be said, the use of the pistol shows the intent in this case must have been to kill, the answer is that, even in murder "committed by the use of a deadly weapon upon a vital part of the body of the deceased," the degree of the crime is for the jury (Com. v. Greene, 227 Pa. 86, 89); and while the law regards such circumstances as "evidence that a specific intent to kill existed," yet this evidence is "never so far conclusive as to such fact that the trial court may pronounce it conclusive as a matter of law": Com. v. Chapler, 228 Pa. 630, 633. Since defendant was not convicted of murder in either degree, it is apparent no harm was done him by the instructions under discussion; they should not, however, be carried, in their present form, into another trial; hence the mention of them at this time.

(w) We entertain no opinion as to the guilt or innocence of appellant, on either of the charges against him, but he is entitled to fully develop his defenses and to have them properly presented to the jury. Here, as already pointed out, defendant was measurably deprived of both these rights, particularly so far as his defense of suicide by the deceased is concerned, for this is mentioned in the charge only in an incidental and inadequate way, and important evidence relating thereto was excluded.

(x) Nevling v. Com., 98 Pa. 322, 326, 336, relied on by appellee, is readily distinguishable on its essential facts from the case at bar. It remains but to say that cases from other jurisdictions, mentioned in the present opinion, are intended to be used by us only on the points in connection with which they are respectively cited.

The judgment is reversed with a venire facias de novo.