Commonwealth *v.* Tyrrell, Appellant.

Argued March 18, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*William H. Coleman,* with him *J. Thomas Hoffman,* for appellant.—Uncommunicated threats made by deceased against defendant are admissible in this case where defendant pleaded self-defense as bearing on the question whether defendant or deceased was the aggressor and also in corroboration of the threats which were communicated to defendant and further as showing the animus or state of mind of the deceased toward defendant: Wiggins v. People, 93 U. S. 465; Com. v. Keller, 191 Pa. 122; Com. v. Santos, 275 Pa. 515.

The language of the trial judge practically conveyed to the jury that in his opinion there was no sufficient ground for a manslaughter verdict: Com. v. Colandro, 231 Pa. 343.

A new trial should have been granted because of the remarks of the district attorney: Com. v. Hickman, 231 Pa. 305; Com. v. Shoemaker, 240 Pa. 255.

*John F. Haggerty,* Assistatant District Attorney, with him *Samuel H. Gardner,* District Attorney, for appellee, cited as to remarks of district attorney: Com. v. Arcuroso, 283 Pa. 84; Com. v. Barille, 270 Pa. 388.

334

Opinion by Mr. Justice Schaffer, April 15, 1929:

Appellant, F. J. Tyrrell, was convicted of murder of the second degree for the killing of Philip F. Clark. No impartial mind considering the testimony could arrive at any other conclusion than that he was guilty of murder of the first degree. Had the jury done its full duty he might now be facing the electric chair. Notwithstanding his lucky escape from graver consequences, he asks us to grant him another trial. Since he could not now be convicted of first degree murder, it would only be error of gravest magnitude which would lead us to halt the payment of the penalty which society's mouthpiece, the law, has pronounced upon him.

He is a lawyer, and was a member and elder of the church in which he killed the deceased, and superintendent of its Sunday school. Bad blood existed between him and the dead man, who was also a member of the church. Clark and his wife were separated and she had begun proceedings for divorce against him in which appellant acted as her counsel. Clark evidently had the idea that appellant was responsible for the breaking up of his home and was endeavoring to have him removed from the positions which he occupied in the church and in addition to this had threatened him with death. Some of these manifestations of ill will had been made to appellant personally, some had been communicated to him by others.

On Sunday morning, May 13, 1928, appellant armed himself with a revolver at his home and proceeded to the church, evidently expecting to find Clark there. He reached the church in advance of the time for the beginning of the Sunday-school services. On arriving there he met Thomas F. Thompson, who was chairman of the official board of the church and who had talked with him by telephone the evening before about the differences between him and Clark. The minister of the church, Rev. Joseph D. Waters, who knew of the ill feeling between the two men, was also at the church when

appellant arrived, as were many members of the congregation. Thompson had been notified by Clark before appellant's arrival that he intended to make charges against appellant before the congregation and Thompson had persuaded him not to do so, on a promise to give him a hearing before the official board of the church after the services were concluded. To inform appellant of this, Thompson called him into the minister's study connected with the church, the Rev. Mr. Waters being in this room, and told him in the latter's presence of the arrangement which had been made for the hearing, whereupon appellant reached in his pocket, drew out the revolver and said, "This is my answer to the whole matter. There will be no hearing here," and turning to the clergyman said, "Waters, you have been two faced in this matter. You have taken sides with Clark and I am down here to clean up. I will get Clark first and then you." The clergyman in fear endeavored to leave the room, saying to appellant, "I will go out and try to get Mr. Clark away," whereupon appellant put his back to the door, flourished the revolver, and said, "No you won't. I am going to end this thing this morning." Thompson remonstrated with him and finally said, "You stay here until I come back," and entered the auditorium. Tyrrell immediately followed him out of the study, walked up the aisle of the church in which Clark was standing, as he proceeded removing the revolver from his hip pocket to his coat pocket, drew it therefrom and coolly and deliberately, while still walking toward him and when eight or ten feet away, fired three shots at Clark, one striking him in the face, another in the heart and the third being deflected by his watch, killing him instantly. Clark was unarmed. He had his glasses in his right hand and in testifying appellant affected to believe that he, appellant, had mistaken them for a revolver. He further said that before he fired Clark threateningly advanced toward him. The disinterested testimony negatives this. Immediately after the shoot-

ing and as Clark lay dead before him, Tyrrell remarked, "He will not say anything more against my character." "He came here to cause trouble and I shot him." "This man came down to cause me trouble and I stopped it." "He got just what he was looking for."

Appellant's principal complaint is that the trial judge refused to admit evidence showing uncommunicated threats made against him by Clark; all testimony showing communicated threats was received. The argument made in favor of the admission of those not communicated to appellant is, that they were admissible, because he had pleaded self defense, as bearing on the question whether he or Clark was the aggressor, and corroborative of the threats which were communicated, and as showing the animus and state of mind of the deceased toward him. So far as corroboration of the threats which had been borne to appellant is concerned, they did not require support; they were numerous and showed a decided ill will by Clark and a declared purpose to kill; unknown ones were but cumulative of those which were known by him and could have added nothing to his conclusion that Clark had a strong animus against him and a virulent hatred and ill will and therefore they would have added nothing to the sum of this ill feeling, had they been received. As to their bearing on the question whether appellant or Clark was the aggressor, they could have had no weight, because the question of who was the aggressor was not a matter of inference but of direct proof. Many witnesses actually saw the shooting and observed the two men as it occurred. No one says that Clark was armed, none that he was the aggressor, the best that appellant himself can say is that Clark had taken a step or two in his direction, and, lamely, that he thought the eye glasses in his hand might be a revolver, and that because his victim did not stop or retreat when he commanded him to stop in the church aisle, he killed him. The uncommunicated threats could have no bearing so far as the deceased's aggression is concerned as

he committed no act of aggression. The defendant advanced upon him armed, and, according to his own spontaneous statement, made when the smoke had scarcely cleared away from the barrel of his pistol, did not kill him because of an act in which his victim was then engaged but so that "He will not say anything more against my character." As was said by the very competent judge who, with fine judicial poise, tried this case, distinguishing it from others in which it was held uncommunicated threats should have been received to support the inference that the deceased was the aggressor (Wiggins v. People, 93 U. S. 465; Com. v. Keller, 191 Pa. 122; Com. v. Santos, 275 Pa. 515) : "The situation is wholly different in the instant case. Here nothing is left to inference, speculation or conjecture respecting the events immediately before or during the shooting or as to who was the aggressor. The whole affair, from beginning to end, was directly witnessed by a veritable multitude of people and the admission of an alleged threat would throw no additional light whatever on the attitude and conduct of these two men at the time of the shooting. No matter what Clark said or meant, if he said it, the overwhelming, eye-witness evidence in the case is that Tyrrell, and not Clark, was the aggressor, that he deliberately approached Clark, pistol in hand, while Clark was standing unarmed, at the far end of the aisle, and that when he got within six, eight or ten feet of him, according to the defendant's own testimony on the stand, he shot him down. There is no circumstantial evidence in this case, and no room or occasion for any inference as to who was the aggressor." So far as the admissibility of the uncommunicated threats to show the slain man's state of mind is concerned, they could only come in under this cover if it was shown that his actions at the time were those of hostility or aggression toward his killer, and nothing of this kind appeared.

We are asked to say because the court charged the jury in the following language that a new trial should

be granted: "There is one other degree which you have the power to find and that would be a verdict of voluntary manslaughter. It will be necessary therefore, because you have that power, to define what voluntary manslaughter is." It is argued that this statement conveyed to the jury the court's opinion that there was no sufficient ground for a manslaughter verdict. It does not so impress us. It is urged that if the shooting occurred under the influence of an uncontrollable fear of death or bodily harm but without the presence of all the ingredients necessary to excuse the act on the ground of self defense, a verdict of manslaughter might have been a proper verdict, citing Com. v. Colandro, 231 Pa. 343. That case, however, does not fit down over the facts in this. There was no evidence of fear on Tyrrell's part; quite the contrary. Clark was not pursuing him, he hunted Clark. Asked to stay in the pastor's study until Thompson could get Clark away, he refused to do so, declaring "I will get Clark first and then you" (meaning the clergymen), and proceeded to put into effect his declared purpose so far as Clark was concerned.

An excerpt is quoted from the charge in which the court said: "The Commonwealth says to you that if the only thing Tyrrell had to fear was the charge that he was helping Mrs. Clark in the divorce case, he had no cause for alarm at all, and should have been glad to have this hearing; but that there was something more, something else behind all this which he did not want to have exposed. This is the claim of the Commonwealth. There is no evidence of it except the very insignificant incident about the rumor of his kissing Mrs. Clark. Of course, members of the jury, Mr. Clark is not here to tell his side of that charge. He is dead. His lips are closed by the bullets fired by the defendant; and there may be something more in that situation that does not appear in the case," and it is argued that this constituted reversible error because the court authorized the jury to draw on their imaginations and say there was something

more than had been given in evidence, that it authorized them to predicate a verdict on rumor or suspicion. Meeting this argument the court in its opinion refusing the motion for a new trial says: "As a matter of fact, there was testimony running throughout the case that Tyrrell had wrecked Clark's home, and that, at least by strong implication, it was this that he wanted to expose before the church board that day, but which Tyrrell's act prevented." Our perusal of the record leads us to the conclusion which the court below reached in this respect.

Other portions of the charge are assigned for error as being prejudicial to the defendant. They do not require particular comment. The entire charge impresses us as being impartial and fair.

Remarks made by the district attorney in his closing address are brought to our attention. We do not regard them as improper, particularly not as they were in answer to an argument made by appellant's advocate in his summing up. No motion was made to withdraw a juror because of them.

A reading of the testimony leaves no doubt in our minds that appellant was guilty of wilful, deliberate and premeditated murder. That he is not required to pay a more severe penalty for his crime is likely due to the skill of the able advocate who earnestly argued his appeal at our bar. Notwithstanding his forceful presentation, we are not convinced of any reversible error in the trial or that any right of his client was infringed upon. We must, therefore, overrule all the assignments of error.

The judgment of the court below is affirmed and the record remitted to the end that the sentence of defendant be carried out.