# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00601-SCT

*EDDIE DUDLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/03/96 |
| TRIAL JUDGE: | HON. BETTY W. SANDERS |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT E. BUCK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  W. GLENN WATTS |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/20/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/10/98 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Eddie Dudley was charged as an habitual offender on a two count indictment on April 25, 1991, for the murder of Cleve Williams, Jr. and possession of a firearm by a convicted felon. His case was tried in the Circuit Court of Washington County on April 30, 1996. After Dudley's motion for directed verdict was denied, the jury returned a guilty verdict on each count of the indictment. The circuit court sentenced Dudley to a life sentence for the murder and a three-year sentence for the possession of a firearm, to run concurrently. Finding no merit to Dudley's assertions that the jury's verdict was contrary to the weight and sufficiency of evidence and that the circuit court erred in admitting opinion testimony from a forensic pathologist regarding a ballistic question, we affirm his sentence and conviction.

### I.

¶2. Cleve Williams was fatally shot in Greenville, Mississippi, on the night of August 4, 1995. The record shows that Vanessa Brown was the sole eyewitness. At trial, Brown testified that she was sitting beside Williams on the front porch of the home of L.C. Pearl, at 414 Valliant Street when suddenly a man she recognized as Dudley appeared on the porch. According to Brown, he said to

Williams, "I told you mother fucker, I'm going to get you." She testified that Dudley went up to Williams and shot him.

¶3. Brown then ran into the house, then to another house, where she found her brother-in-law, Johnny Goodman. After hearing the details of the incident, Goodman called the police. At trial, Brown could not remember what the individual who shot Williams was wearing, but she testified to seeing his face from a few feet away. She also testified that she saw that Dudley had a gun. Brown testified that she recognized Dudley as the shooter from their previous intimate relationship and their relationship as neighbors. The record reveals that at the time of the shooting, there was one street light in the area, but there were no lights on the porch.

¶4. Officers were not able to recover a weapon from the crime scene. Officer Anthony Ferguson noticed that Brown was crying, upset, and had a light smell of alcohol. When Captain Stacy Hollis of the Greenville Police Department interviewed Brown, he noticed that she was upset and smelled of alcohol. Nonetheless, Hollis concluded that Brown was coherent and capable of relating to him her version of what transpired. Brown identified Dudley as a suspect. Blood stains identified at the house where Dudley was arrested were never sent for identification at the State Crime Lab. Officer Steven Boykin, with the crime scene unit of the Greenville Police Department, testified that he collected two .22 caliber cartridges from the location where Dudley was arrested.

¶5. Dr. Steven Hayne, a forensic pathologist, determined that the cause of Williams's death was a homicide by multiple gunshot wounds. Of the five wounds found on Williams, Hayne stated that three of the five were potentially lethal. Hayne testified that the projectile taken from Williams's body was consistent with a .22 caliber projectile.

II.

¶6. Dudley first argues that the jury verdict was contrary to the weight and sufficiency of the evidence presented at trial. Although he fails to note the distinctions within his assignment of error, Dudley's sufficiency of the evidence argument is a question of pure law, while his argument that the verdict was against the overwhelming weight of the evidence addresses the sound discretion of the trial court. *May v. State*, 460 So. 2d 778, 780-81 (Miss. 1984). As such, a greater quantum of evidence is necessary for the State to withstand a challenge that the verdict is contrary to the overwhelming weight of the evidence, as distinguished from the legal sufficiency of the evidence argument. *Id.* at 781.

¶7. When reviewing a challenge to the sufficiency of the evidence, this Court considers all of the evidence in the light most consistent with the verdict, giving the State the benefit of all inferences favorable to the verdict. When the evidence before the jury is such that reasonable jurors could have found the defendant guilty, the verdict is beyond our authority to disturb. *Taylor v. State*, 672 So. 2d 1246, 1255 (Miss. 1996).

¶8. "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997); *Jackson v. State*, 689 So. 2d 760, 766 (Miss. 1997). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to

allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Pleasant v. State*, 701 So. 2d 799, 802 (Miss. 1997); *Herring*, 691 So. 2d at 957; ***Benson v. State***, 551 So. 2d 188, 193 (Miss. 1989)(citing ***Groseclose v. State***, 440 So. 2d 297, 300 (Miss. 1983)). As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper. ***May***, 460 So. 2d at 781-82.

¶9. Dudley argues that the State's only link between him and Williams's death is the testimony of Vanessa Brown. He points out that Brown could only have been able to see Williams's assailant on two occasions (when the gunman jumped on the porch and while she was running down the street after the shooting occurred), that Brown had been drinking during the day prior to Williams's shooting, and that Brown was unable to identify what the gunman was wearing or the gun being used, but was able to identify his face as Dudley's. Additionally, Dudley argues that the remaining evidence from Hayne and Boykin was not sufficient to convict him, especially in light of the fact that no weapon was recovered.

¶10. Regarding the identification of Dudley as the shooter, Brown's testimony supports the verdict. At the time Williams was shot, Brown was seated only a few feet away from Williams. Although she could not describe what the shooter was wearing, her prior relationship with Dudley allowed her to recognize him. She stated that she saw Dudley when he shot Williams and while he was walking back down the street. Dudley's attorney tried to impeach her credibility as a witness by pointing out that she had been drinking beer on that day. However, there was no testimony as to when the beer had been consumed; rather, there was only testimony that Brown had alcohol on her breath at the time of her initial interview with officers. The investigating officers found her to be coherent, and she insisted that she recognized Dudley's face. Brown also was familiar with Dudley's voice, and identified him as the person who said, "I told you mother fucker, that I was going to get you."

¶11. Additionally, the circumstantial evidence presented by Hayne regarding the caliber of projectile found in Williams's body is consistent with the cartridges found when Dudley was arrested. Considering the evidence presented in the light most consistent with the verdict, reasonable jurors could have found Dudley guilty. Further, we cannot say that the verdicts returned are so contrary to the evidence in the record that a new trial is warranted.

III.

¶12. Dudley also argues that Dr. Steven Hayne was not qualified to testify as to the caliber of the projectile recovered from the body of Cleve Williams. Dudley claims that pursuant to Miss. R. Evid. 702, a witness must possess some experience or expertise beyond that of average, randomly selected adults, and because Hayne admitted that he was not a firearms expert, he could not testify regarding the caliber of the weapon used to kill Williams.

> Q: Dr. Hayne, based on your experience with autopsies involving gunshot wounds and the finding of bullets, projectiles, during those examinations, do you have an opinion regarding the caliber of the projectiles that you recovered from the body of Cleve Williams?
>
> A. Yes, ma'am.
>
> Q. And what is your opinion regarding the caliber?

A. That they were consistent with a .22 caliber projectile.

Regarding his qualifications, Dr. Hayne stated:

> I'm not a firearms expert. I'm trained in the use of firearms and certainly I am familiar with them, and I go to a conclusion one degree less than a firearms expert would make. Certainly I have some understanding of the metalogy [sic] of projectiles, the coatings and different types of projectiles. We recover so many of them, and we have a standard set on the wall at the morgue that we compare them to, and I leave the final and official comparison to the firearms division of the state Crime Lab.

In this case, however, the bullets were never sent to the crime lab, ostensibly because the weapon from which they allegedly were fired was never recovered. Therefore, the State relied on Hayne's testimony as to the projectiles being consistent with .22 caliber bullets and the experience of Greenville police officers who were familiar with such projectiles. Hayne performed no specific tests to determine the caliber of the bullets removed from Cleve Williams's body. No firearms examiner ever testified that the projectiles recovered were definitively .22 caliber bullets.

¶13. Although it has not explicitly made such a ruling, this Court has implicitly allowed pathologists to make such testimony, which stops short of definitively stating the caliber of weapon used. *See Ethridge v. State*, 418 So. 2d 798, 800 (Miss. 1982)( pathologist testified that the decedent was shot with a handgun of mid-caliber size consistent with the size of a .38 caliber bullet). However, the Supreme Court of Pennsylvania was faced with a similar question in *Commonwealth v. Smith*, 513 A.2d 1371 (Pa. 1986). The defendant alleged that Chief Deputy Medical Examiner for the City of Philadelphia, a forensic pathologist, should not have been permitted to testify as an expert witness giving his opinion as to the caliber of bullet which caused the death of the victim. *Id.* at 1378. In finding that the testimony of the medical examiner was proper, the court reasoned that:

> [a]n opinion regarding the size of the projectile which would be expected to have caused the wounds that the witness had observed and described was particularly within the witness' expertise, because knowledge of traumatic injuries and the forces required to produce them were requisite to rendering such an opinion. Familiarity with the effects of bullets upon the human anatomy was, of necessity, an integral part of the experienced Chief Deputy Medical Examiner's knowledge. Thus, we do not agree with appellant's contention that a ballistics expert, rather than a forensic pathologist, should have been utilized as the source of opinion testimony regarding the nature of the projectile that caused the wound. This is in keeping with prior decisions of this Court which have held admissible the testimony of expert medical witnesses, who, although not specifically qualified as ballistics experts, have, based upon an examination of a gunshot wound, formed an opinion as to certain ballistics aspects of the cause of the wound. *Commonwealth v. Gonzales*, 463 Pa. 597, 602-603, 345 A.2d 691, 694 (1975) (medical doctor/coroner permitted to give opinion regarding distance from which shot was fired); *Commonwealth v. Santos*, 275 Pa. 515, 526-527, 119 A. 596 (1923)(examining physician permitted to give opinion as to direction and distance of shot, as well as the position of the parties).

*Id.*

¶14. We find the reasoning of the Pennsylvania Supreme Court to be sound. Given Dr. Hayne's extensive forensic experience, it was possible for him to state that the projectile removed from Williams's body was consistent with a .22 caliber bullet. However, Hayne admitted that he could not and did not make a conclusive determination of the caliber of the bullet. The circuit court, therefore, did not err in allowing Hayne to testify that the caliber of the projectiles was consistent with a .22 caliber projectile. However, we make note of the fact that the State apparently did not make an effort to have the projectiles in this case examined and identified by ballistics experts from the Mississippi Crime Lab, which is a standard procedure. The State should be cautioned that it cannot in the future rely solely on the testimony of forensic experts to establish ballistic matters. But for the eyewitness testimony in this case as to the gunman's identity, the State's case would be sorely lacking.

IV.

¶15. There is no merit submitted to either assignment of error by raised by Dudley. Accordingly, we affirm his conviction and sentence.

¶16. **COUNT I: CONVICTION OF MURDER AS AN HABITUAL OFFENDER AND SENTENCE OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF FIREARM BY CONVICTED FELON AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED AND APPELLANT ASSESSED COURT COSTS OF $242.50. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY TO SENTENCE IN COUNT I.**


**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**